Cleta T. **MEDFORD**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–87–221–CR.

Court of Appeals of Texas, Austin.

March 1, 1989.

Rehearing Denied April 5, 1989.

David H. Reynolds, Austin, for appellant.

Billy Ray Stubblefield, County Atty., Sara W. Naylor, Asst. County Atty., Georgetown, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

GAMMAGE, Justice.

Cleta Medford appeals from a conviction of driving while intoxicated with serious bodily injury. Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(f) (Supp.1989). We will affirm the judgment.

On October 19, 1986, Medford crossed the center line of a four lane highway and collided head-on with a pickup truck driven by sixteen-year-old Jennie Brasfield. Jennie and her passenger, sixteen-year-old Mark Goodman, suffered extensive injuries. After the trial court informed Medford of the range of punishment, she waived her right to a jury and pleaded no contest on May 29, 1987. A sentencing hearing was set for July 2, 1987. On June 11, 1987, Medford filed a motion for substitution of counsel and for a continuance. The court granted both motions and set the sentencing hearing for August 10, 1987, at which time Medford was sentenced to con-

finement for one year and fined $2500. On September 9, 1987, Medford filed a motion for new trial. After hearing testimony from Medford, her daughter and her doctor, Judge Maresh denied the motion.

By two points of error, Medford complains the court erred in denying her motion for new trial because her first attorney gave her ineffective assistance. Because the decision to grant a motion for new trial is within the discretion of the trial court, abuse must be shown or the decision will not be disturbed on appeal. *Appleman v. State*, 531 S.W.2d 806, 810 (Tex.Cr.App. 1976) (on motion for rehearing).

■ A criminal defendant is entitled to reasonably effective assistance of counsel which is judged by the totality of the representation. *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Cr.App.1986). Ineffective assistance requires a showing that "counsel's performance was deficient … [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Cr.App.1986). In determining deficiency, we look at the total circumstances and presume counsel rendered adequate assistance and exercised professional judgment. 466 U.S. at 690, 104 S.Ct. at 2066. In finding prejudice, we must determine:

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

466 U.S. at 694, 104 S.Ct. at 2068.

Medford argues her original counsel was ineffective because he rejected a low potassium defense, failed to interview expert or fact witnesses, failed to file pretrial motions and failed to properly inform her of the mandatory 30 days in jail if convicted of the offense charged. She claims these errors caused her to plead "no contest" rather than "not guilty."

The record is sorely deficient in this case. There is no testimony by, or summarized

from, Medford's first attorney in response to these allegations. The record fails to indicate that he was requested or subpoenaed to testify at the hearing on motion for new trial. Without the benefit of the original attorney's testimony, we must view the record presuming he made the significant decisions with reasonable professional judgment.

At the hearing on motion for new trial, Medford's daughter, a registered nurse, testified that hospital records show Medford had a low potassium count and this could cause dizziness or weakness which, in turn, could have caused the accident. Medford argues that failure to assert this as a defense was ineffective assistance of counsel.

■ Records show that when the hospital admitted Medford she had the smell of alcohol on her breath. There were apparently two blood tests administered, one by the hospital and one by the police. A letter from her doctor describes the hospital blood test results as showing a blood alcohol level of ".77" (obviously a typographical error, and well beyond the level at which death would result), and asserts that this is clearly *below* the legal intoxication level. The legal intoxication level is, however, .10. Medford's daughter testified that when the possible defense of low potassium was discussed in a pretrial meeting the lawyer replied:

> We have a little student nurse who is a witness to say that your mother gave permission for the patrolman to have the blood drawn for the test and we have the results of that and there is nothing else as important and there won't be any jail time anyway, you know, so it's nothing to worry about.

Neither the hospital nor the police blood test is in evidence because Medford pleaded no contest. Presuming the daughter's testimony regarding what the attorney told her is correct, we may infer the results of the police test were above .10, and that Medford was intoxicated as a matter of law, thus rendering a low potassium defense irrelevant. *Scherlie v. State*, 689

S.W.2d 294 (Tex.Civ.App.1985), *aff'd*, 715 S.W.2d 653 (Tex.Cr.App.1986).

Medford also asserts ineffective assistance because no pretrial motions were filed, the police blood-alcohol test was not challenged and no witnesses were interviewed. Medford fails, however, to raise any questionable circumstances surrounding the blood test or to explain the merit of any pretrial motions. Furthermore, there is no evidence that witnesses were not interviewed. In fact, the opposite can be inferred from the testimony of Medford's daughter, who testified that the lawyer required her to give him a medical release so he could review the hospital records. Moreover, the fact that the lawyer informed Medford of the police blood test, and that a student nurse was willing to testify that Medford gave permission for it, implies the lawyer at least examined the police reports and talked to the nurse. The record does not support Medford's allegation of ineffective assistance of counsel and this Court will not attack trial counsel's strategy through hindsight. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Cr.App.1983).

■ Finally, Medford asserts her original lawyer told her she would get probation rather than serve time in jail, though three days might be required. The range of punishment for this offense is 63 days to two years, Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(f) (Supp.1989), and even were the trial court to grant probation, a minimum jail sentence of 30 days is required. Tex.Code Cr.P.Ann. art. 42.12, § 6b(b)(1) (Supp.1989). Medford claims that, had she known a minimum of 30 days in jail was required, she would not have pleaded "no contest." She argues her lawyer's failure to inform her of the minimum jail provision resulted in an involuntary plea. We disagree.

When a defendant enters a guilty plea or plea of no contest, it must be freely, knowingly and voluntarily entered. Tex.Code Cr.P.Ann. art. 26.13 (Supp.1989). This rule codifies the constitutional due process requirement and assures that a defendant pleads with a "full understanding of charges and the consequences of his plea."

*Basham v. State,* 608 S.W.2d 677 (Tex.Cr. App.1980).

There is no record before us of the plea hearing and it is not the result of a plea bargain, but in the motion hearing the trial court stated the following for the record:

I want the record to reflect though that the Court has no recollection about defendant's statements about the potassium or anything like that. The Court's specific recollection is that she had signed a Waiver of a Jury. The Court admonished her to begin with what the minimum and maximum possible punishments are before taking the plea. That the Court also noted that she had signed a Waiver of a Jury and inquired of her— had first explained to her that she had a right to trial by jury, confrontation of witnesses, right of cross exam, right to counsel which she had and that she was asked by the Court whether or not she signed that waiver willing [sic], freely and did she understand what she was signing and what she had signed and that she answered, "Yes" to all those questions, that she understood and did so willingly and freely and she was further then asked if she still wished to plead no contest and a—plea of no contest also explained to her that I don't have to hear evidence—any evidence to find her guilty and then, subsequent thereto, she was found—the plea was accepted and she was found guilty.

Medford testified that she remembered the judge's admonishments, and that she wanted a trial because she felt she was not guilty but that she was strongly advised against it. She testified that her lawyer advised her that she would not go to jail, except possibly for three days, and that had she known her lawyer's advice was wrong and there was a minimum jail sentence of 30 days, she would never have pleaded no contest.

Nowhere in the record does Medford assert that the court or her original lawyer *promised* total probation or that probation was required. The testimony from Medford and her daughter reflects her attorney's *opinion* that, because of Medford's age, physical condition and prior record, the court would be lenient. The fact that Medford relied on her attorney's professional opinion does not make the plea involuntary. *Kirven v. State,* 492 S.W.2d 468, 470 (Tex.Cr.App.1973).

Medford cites *Ex Parte Kelly,* 676 S.W. 2d 132 (Tex.Cr.App.1984), to support her contention that incorrect information regarding the possibility of probation renders her plea involuntary. Kelly pleaded guilty to aggravated sexual abuse, purportedly based on the erroneous advice of his trial counsel that he would receive probation from the trial court. The law, however, allowed a jury, not a judge, to grant probation for this crime. Evidence at his postconviction evidentiary hearing included testimony from Kelly, his mother and his brother that trial counsel promised them Kelly would not go to prison as a result of the charges. The assistant district attorney, present when the guilty plea was entered, testified that trial counsel continued to try to get a recommendation for probation. The trial judge ordered the probation department to perform a pre-sentence investigation and return a recommendation, which supports the contention that even the trial judge operated under the wrong assumption that Kelly was eligible for probation. Kelly's trial counsel also testified, but claimed that he never told Kelly he would get probation. In *Kelly,* there were sufficient facts in the record to determine that trial counsel induced Kelly to plead guilty based on misrepresentations that he was eligible for probation.

*Kelly* differs greatly from this case. Medford *was* eligible for probation, but with a mandatory 30 days in jail as a condition of probation. The record does not reflect any attempted plea negotiations with the State. The only evidence of any misrepresentation was testimony from Medford and her daughter. Medford argues that, because there is no evidence in the record to rebut this testimony, the trial court was required to accept it as true. The trier of facts, however, is free to accept or reject testimony of any witness. *Hawkins v. State,* 660 S.W.2d 65, 72 (Tex.

Cr.App.1983); *Limuel v. State,* 568 S.W.2d 309, 311 (Tex.Cr.App.1978).

Moreover, even after Medford changed lawyers she did not file a motion to withdraw her plea, which was then still within the trial court's discretion. *McWherter v. State,* 571 S.W.2d 312, 313 (Tex.Cr.App. 1978). Instead she waited until the sentencing hearing, which was two months after her plea and one and one-half months after she retained new counsel. The first time she claimed error was *after* the trial court pronounced sentencing.

The same judge presided over all proceedings below and was in the best position to assess the credibility of witnesses, together with the timing of the Medford's claim of involuntary plea. We may not conclude from this record that the trial court abused its discretion in denying a new trial. *Carr v. State,* 646 S.W.2d 520 (Tex.App.1982, pet. ref'd).

The judgment of the trial court is affirmed.