TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-01-00546-CR







Daniel Regino Gonzalez, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 51,693, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING






 Appellant David Gonzalez pleaded guilty to the felony offense of aggravated robbery. 
The district court assessed punishment at twenty-five years in prison. By one issue, appellant claims
he was denied effective assistance of counsel. We will overrule his issue and affirm the conviction.


BACKGROUND

 Before accepting appellant's guilty plea, the district court twice asked if he had had
enough time to go over his case with his attorney and whether he was satisfied with his attorney's
representation. Appellant answered affirmatively. The court also informed appellant of the
punishment range for the charged offense and explained his rights. After confirming that appellant
was pleading guilty freely and voluntarily, the court commented on the fact that there was no plea
recommendation. The district court accepted appellant's guilty plea, and the State offered
appellant's written judicial confession as evidence. The district court found the evidence sufficient
but withheld a finding of guilt and set the case for a punishment hearing following a presentence
investigation. Appellant, his mother, and the complaining witness testified at the hearing. Defense
counsel requested that the court place appellant on deferred-adjudication probation or order his
confinement at a substance abuse felony punishment facility. The State urged the court to sentence
appellant to thirty-five years.

 The district court found appellant guilty and assessed his punishment at twenty-five
years in prison. Thereafter, appellant obtained new counsel and filed a motion for new trial. During
the hearing on the motion, appellant, appellant's mother, appellant's defense counsel at trial, and the
mother of another defendant who had been represented by the same defense counsel all testified. 
The district court overruled the motion for new trial, and appellant filed his notice of appeal.


DISCUSSION

 By a single issue presented, appellant urges that the district court erred in overruling
his motion for new trial based on ineffective assistance of counsel. We review a district court's
order denying a motion for new trial under an abuse-of-discretion standard. State v. Gill, 967
S.W.2d 540, 542 (Tex. App.--Austin 1998, pet. ref'd). Thus, we must examine the district court's
application of the Strickland test, which governs claims of ineffective assistance of counsel, and
determine whether the denial of the motion for new trial was so outside the zone of reasonable
disagreement that it is subject to reversal. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App.
1992). 

 The United States and Texas Constitutions guarantee the right to reasonably effective
counsel at trial. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Strickland v. Washington, 466 U.S.
668, 686 (1984); Hernandez v. State, 726 S.W.2d 53, 55-56 (Tex. Crim. App. 1986). In reviewing
claims of ineffective assistance of counsel, we apply the two-pronged test articulated in Strickland: 
the appellant must show that (1) his defense counsel's performance was deficient in that counsel
made such serious errors that he was not functioning effectively as the "counsel" guaranteed by the
Sixth Amendment, and (2) the deficient performance prejudiced the defense to such a degree that
the defendant was deprived of a fair trial. Strickland, 466 U.S. at 687; Hernandez, 726 S.W.2d at
57. 

 When a defendant who has pleaded guilty to the charged offense challenges the
effectiveness of his counsel, we must determine (1) whether counsel's advice was within the range
of competence demanded, and if not, (2) whether there is a reasonable probability that, but for the
ineffective assistance, the defendant would not have pleaded guilty and would have insisted on going
to trial. Ex parte Moody, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999); Flores v. State, 18
S.W.3d 796, 799 (Tex. App.--Austin 2000, no pet.). Review of counsel's representation is highly
deferential, and courts indulge a strong presumption that defense counsel acted within the wide range
of reasonable professional assistance. McFarland v. State, 845 S.W.2d 824, 843 (Tex. Crim. App.
1992); Flores, 18 S.W.3d at 799. In order to prevail on his claim, appellant must show that his
defense counsel's performance was deficient and that it is reasonably probable that he would have
insisted on a trial had he been properly advised. Moody, 991 S.W.2d at 858.

 Appellant complains that his defense counsel was deficient in at least two respects:
by failing to properly investigate the case and by failing to properly advise him. In support of his
failure to investigate claim, appellant argues his defense counsel failed to investigate a possible
medical condition that may have been helpful to his case, failed to conduct discovery or interview
the victim, and failed to obtain and view a videotape of the robbery.

 Appellant's mother testified during the motion for new trial hearing that at the
suggestion of appellant's defense counsel, she obtained copies of appellant's medical records, which
indicated that appellant had a learning disability and possible mental problems. Specifically,
appellant's mother testified that appellant suffered from attention deficit hyperactivity disorder. 
Although defense counsel told appellant's mother that he could use those records, he ultimately
returned the records to appellant's mother and never used them. Defense counsel also testified at
the motion for new trial hearing. He stated that initially he considered using the medical records as
mitigating evidence, but after reviewing the records and discussing them with appellant, he decided
not to do so. Defense counsel admitted that he never consulted with a medical professional in
reaching this determination.

 Appellant also claims that his counsel failed to conduct any discovery or to interview
the complaining witness. According to appellant, defense counsel "did nothing more than talk to
his client and read the statement the victim had given." Defense counsel, however, explained that
the victim's statement was consistent with the story that his client had recounted. In addition, the
State maintained an open file, and defense counsel reviewed that file.

 Appellant's mother testified that defense counsel failed to obtain the videotape of the
robbery but repeatedly told her that he had the videotape and had viewed it. When she requested to
view it, however, defense counsel told her that his copy was not very good and that he would have
to request a new one from the prosecutor. Although appellant's mother testified that she repeatedly
asked to view the tape and made an appointment with defense counsel to view it at his office,
defense counsel never provided appellant's mother a copy of the videotape. Defense counsel
testified that he planned to obtain the videotape and view it if the case proceeded to trial. Because
it did not, he never asked to view the videotape.

 Ordinarily, defense counsel should make an independent investigation of the facts of
a case and not blindly rely on the veracity of his client's version of the facts or the witness statements
in the State's file. McFarland v. State, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). Defense
counsel has a duty to make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary. Id. (quoting Strickland, 466 U.S. at 691). A decision not to
investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy
measure of deference to counsel's judgments." Id. (quoting Strickland, 466 U.S. at 691). A
conviction will not be reversed unless the failure to investigate resulted in the failure to advance the
only viable defense available to the accused and there is a reasonable probability that the result of
the proceeding would have been different but for the failure to advance the defense. Id. (quoting Ex
parte Duffy, 607 S.W.2d 507, 517 (Tex. Crim. App. 1980); Strickland, 466 U.S. at 694).

 Failure to personally interview a State's witness does not deny effective assistance
of counsel if witness statements were available and counsel concludes personal interviews are
unnecessary. Wilkerson v. State, 726 S.W.2d 542, 550 (Tex. Crim. App. 1986). In this case, during
the motion for new trial hearing, appellant testified that he confessed to committing the robbery to
the police at the time of his arrest. He also agreed that there was no doubt that he was the perpetrator
of the offense and that from the beginning, he told defense counsel that he was guilty of the offense. 
According to defense counsel, appellant's recollection of the robbery was substantially similar to the
complaining witness's statement. The Supreme Court has instructed that the reasonableness of
defense counsel's actions, such as investigation decisions, may be substantially influenced by the
defendant's own statements or actions. Strickland, 466 U.S. at 691. Depending on the information
provided by the defendant, the need for further investigation may be considerably diminished. Id. 
In light of appellant's persistent admission of guilt, we cannot say that defense counsel's decisions
regarding the need for further investigation fell below the range of competence demanded.

 Even if we were to assume that defense counsel's decision not to investigate fell
below an objective standard of reasonableness, we are not convinced that appellant would have
refused to plead guilty and insisted on a trial but for his counsel's ineffective investigation. 
Appellant never alleged that an interview with the complaining witness or a viewing of the videotape
may have revealed a defense that he did not have the opportunity to assert. In fact, appellant
admitted that he was the perpetrator of the offense. Furthermore, although appellant urges on appeal
that the medical records could have had a significant impact on how defense counsel should have
proceeded in the guilt-innocence phase or sentencing, before the district court accepted appellant's
guilty plea, appellant informed the district court that he understood his rights including his right to
a jury, that he had had sufficient time to confer with his attorney, and that he was freely and
voluntarily pleading guilty. See Graves v. State, 803 S.W.2d 342, 346 (Tex. App.--Houston [14th
Dist.] 1990, pet. ref'd) (appellant has ultimate authority to make decision to plead guilty). We hold
that appellant failed to establish that defense counsel's failure to investigate rendered his assistance
ineffective.

 Appellant claims his defense counsel failed to properly advise him because counsel
failed to convey to appellant or his mother that the prosecution had offered a thirty-five-year plea
bargain. In addition, appellant claims that his defense counsel repeatedly represented to him and his
mother that appellant would be placed on probation. He never mentioned that appellant might be
sentenced to serve time in a penitentiary. Furthermore, appellant claims his defense counsel took
positions during the motion for new trial hearing that demonstrate his lack of understanding and
candor.

 During the motion for new trial hearing, appellant was asked: "He [defense counsel]
didn't tell you the State would offer you 35 years as a plea agreement?" Appellant answered, "No." 
Appellant insisted that defense counsel never "came to me with a plea." Defense counsel, on the
other hand, testified that he discussed with appellant the plea bargain offered by the State
"immediately after receiving [it]," and "he [appellant] rejected that."

 Defense counsel's failure to inform a criminal defendant of the State's plea offer falls
below an objective standard of professional reasonableness. Ex parte Lemke, 13 S.W.3d 791, 795
(Tex. Crim. App. 2000). Here, however, the district court was presented with conflicting testimony. 
A trial court enjoys broad discretion to consider the credibility of the witnesses at a motion for new
trial hearing and may consider the interests and bias of any witness. See Valle v. State, 963 S.W.2d
904, 908 (Tex. App.--Texarkana 1998, pet. ref'd); Dusenberry v. State, 915 S.W.2d 947, 949 (Tex.
App.--Houston [1st Dist.] 1996, pet. ref'd). This Court must view the evidence in the light most
favorable to the district court's ruling and should not reverse it absent an abuse of discretion. 
Furthermore, the court assessed appellant a sentence of twenty-five years, rather than thirty-five
years, and appellant testified at the motion for new trial hearing that he would not have accepted the
plea bargain offered by the State. He did not assert that had he heard of the offer, he would have
insisted on pleading not guilty and proceeding to trial. Cf. Ex Parte Wilson, 724 S.W.2d 72, 74 (Tex.
Crim. App. 1987) (defendant established prejudice by stating he would have agreed to State's plea
bargain offer if he had been informed of offer).

 In his affidavit in support of the motion for new trial, appellant stated that his defense
counsel told him he would get probation but never told him that he could not get "straight" probation
with a conviction for aggravated robbery, see Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (a)(1)(F)
(West Supp. 2002) (court cannot probate sentence if defendant convicted of aggravated robbery),
never mentioned deferred-adjudication probation, see id. § 5(a), and never explained the difference
between probation and deferred adjudication. During the hearing on the motion for new trial,
appellant testified that he had never heard of the words "deferred adjudication" before the sentencing
hearing and that he was never informed of the difference between deferred adjudication and
probation. When asked what defense counsel had told him regarding the possibility of being placed
on probation by the court, appellant testified: "He [defense counsel] told me that he was going to get
me SAFPF [substance abuse felony punishment facility], boot camp and probation but then before
I went to court he said that he was just going to try to get me a regular probation." Appellant was
also asked whether he thought there was any realistic chance of not getting probation and going to
prison. He responded: "Not as he [defense counsel] told me." Appellant further testified that he did
not know what SAFPF entailed and his defense counsel never explained it to him. On cross-examination, appellant was asked whether he would have pleaded guilty before a jury if he had
known that the judge could not grant probation; appellant responded: "I guess. I don't know."

 Similarly, appellant's mother testified that defense counsel "said he was going to go
for SAFPF which meant nine months SAFPF and three months halfway house. . . . And that's what
he was going to go for and the rest probation." She stated that defense counsel changed his strategy
to request straight probation just before the sentencing hearing.

 Beth Felks, the mother of another of defense counsel's clients, also testified during
the motion for new trial hearing. She stated that defense counsel had told her that appellant would
likely receive probation:


Q. Did he [defense counsel] ever tell you anything about the possibility of
[appellant] getting probation?


A. Yes, sir.


Q. And what did he tell you?


A. He said [appellant] was a prime candidate for probation.


Q. Did he ever mention the possibility of a prison sentence?


A. No, sir. 



 In contrast, defense counsel testified that he told appellant "there was a possibility
of probation." He further stated: "But it was my thinking that we were looking at around ten years
but I told him there was an opportunity for probation, that it would be a deferred probation. We
talked about what deferred probation was. We talked about conditions of a deferred probation. 
What it meant as far as a finding of guilty versus a finding of not guilty." When asked if he
explained to appellant that a jury could recommend straight probation, but a judge could only grant
him deferred adjudication, defense counsel answered that he did explain that to appellant.

 Misinformation regarding a matter such as probation may render a guilty plea
involuntary if appellant can establish that his guilty plea was induced by the misinformation. Tabora
v. State, 14 S.W.3d 332, 336 (Tex. App.--Houston [14th Dist.] 2000, no pet.). A defendant does
not receive ineffective assistance of counsel, however, simply because defense counsel advises the
defendant to plead guilty under an expectation that the court will probate the sentence or impose a
lighter sentence than is received. Graves, 803 S.W.2d at 345; Medford v. State, 766 S.W.2d 398,
401 (Tex. App.--Austin 1989, pet. ref'd). A defendant's reliance on his attorney's professional
opinion does not render a guilty plea involuntary. Graves, 803 S.W.2d at 345; Medford, 766 S.W.2d
at 401. Nor do unsuccessful strategies render a plea involuntary. Graves, 803 S.W.2d at 345. 
Appellant acknowledged that he was aware of the punishment range for the charged offense, and that
neither the State, the court, the probation officer, nor the police promised him probation. 
Furthermore, defense counsel's representations regarding appellant's eligibility for probation do not
constitute misinformation; although ordinary probation differs from deferred adjudication, deferred
adjudication is a form of probation. See id. at 344. Although appellant may have relied on defense
counsel's opinion of what type of punishment may be assessed and may have been disappointed in
the punishment actually assessed, this does not render his counsel ineffective.

 Finally, appellant argues that his defense counsel did not have a firm grasp of the law. 
At the motion for new trial hearing, appellant's defense counsel was asked:


Q. [by appellate counsel] Okay. Explain to me why you needed their [the State's]
permission to do an open plea of guilty to a judge that you were going to for
sentencing?


A. They [the State] were not going to waive a jury.


Q. What would be the function of the jury?


A. Well, if they weren't going to waive a jury we would have to go to a jury on
innocence or guilt.


Q. And your client would not be able to, not be allowed to plead guilty?


A. Well, not if they did not waive a jury, no.


Q. That's your understanding of the law?


A. Yes.


. . . .


Q. So you're saying they wouldn't waive a jury that you're going to plead guilty in
front of?


A. Initially he wouldn't waive a jury. We really didn't want a jury.


Q. You said he would not waive a jury?



 The State would not waive a jury.



Q. Okay. My question to you is: Why do you believe you needed their permission
to enter a plea of guilty when you're going to the judge on punishment?


A. Well, they wouldn't let me plead guilty without waiving a jury, sir.


Q. And you believe you needed the State's permission to enter a guilty plea in front
of a jury?

A. We could have went - - in order to plead, we had to have their permission to
waive a jury or they were not going to waive a jury.



This line of questioning reveals that defense counsel may have been confused regarding the
procedure when entering a plea of guilty. Nevertheless, this confusion does not suggest that
appellant would have chosen to plead not guilty and insisted on a trial if he were advised differently.


CONCLUSION

 Appellant has not satisfied his burden to show that he received ineffective assistance
of counsel. He failed to establish that his counsel's conduct fell below a reasonable standard of
competence or that he did not knowingly and voluntarily choose to plead guilty. We therefore
overrule his sole issue on appeal and affirm the district court's judgment of conviction.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish