# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00546-CR

**Daniel Regino Gonzalez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 51,693, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

Appellant David Gonzalez pleaded guilty to the felony offense of aggravated robbery. The district court assessed punishment at twenty-five years in prison. By one issue, appellant claims he was denied effective assistance of counsel. We will overrule his issue and affirm the conviction.

### BACKGROUND

Before accepting appellant=s guilty plea, the district court twice asked if he had had enough time to go over his case with his attorney and whether he was satisfied with his attorney=s representation. Appellant answered affirmatively. The court also informed appellant of the punishment range for the charged offense and explained his rights. After confirming that appellant was pleading guilty freely and voluntarily, the court commented on the fact that there was no plea recommendation. The district court

accepted appellant=s guilty plea, and the State offered appellant=s written judicial confession as evidence. The district court found the evidence sufficient but withheld a finding of guilt and set the case for a punishment hearing following a presentence investigation. Appellant, his mother, and the complaining witness testified at the hearing. Defense counsel requested that the court place appellant on deferred-adjudication probation or order his confinement at a substance abuse felony punishment facility. The State urged the court to sentence appellant to thirty-five years.

The district court found appellant guilty and assessed his punishment at twenty-five years in prison. Thereafter, appellant obtained new counsel and filed a motion for new trial. During the hearing on the motion, appellant, appellant=s mother, appellant=s defense counsel at trial, and the mother of another defendant who had been represented by the same defense counsel all testified. The district court overruled the motion for new trial, and appellant filed his notice of appeal.

## DISCUSSION

By a single issue presented, appellant urges that the district court erred in overruling his motion for new trial based on ineffective assistance of counsel. We review a district court=s order denying a motion for new trial under an abuse-of-discretion standard. *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.CAustin 1998, pet. ref=d). Thus, we must examine the district court=s application of the *Strickland* test, which governs claims of ineffective assistance of counsel, and determine whether the denial of the motion for new trial was so outside the zone of reasonable disagreement that it is subject to reversal. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

The United States and Texas Constitutions guarantee the right to reasonably effective counsel at trial. U.S. Const. amend. VI; Tex. Const. art. I, ' 10; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55-56 (Tex. Crim. App. 1986). In reviewing claims of ineffective assistance of counsel, we apply the two-pronged test articulated in *Strickland*: the appellant must show that (1) his defense counsel=s performance was deficient in that counsel made such serious errors that he was not functioning effectively as the Acounsel@ guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 687; *Hernandez*, 726 S.W.2d at 57.

When a defendant who has pleaded guilty to the charged offense challenges the effectiveness of his counsel, we must determine (1) whether counsel=s advice was within the range of competence demanded, and if not, (2) whether there is a reasonable probability that, but for the ineffective assistance, the defendant would not have pleaded guilty and would have insisted on going to trial. *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999); *Flores v. State*, 18 S.W.3d 796, 799 (Tex. App.CAustin 2000, no pet.). Review of counsel=s representation is highly deferential, and courts indulge a strong presumption that defense counsel acted within the wide range of reasonable professional assistance. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992); *Flores*, 18 S.W.3d at 799. In order to prevail on his claim, appellant must show that his defense counsel=s performance was deficient and that it is reasonably probable that he would have insisted on a trial had he been properly advised. *Moody*, 991 S.W.2d at 858.

Appellant complains that his defense counsel was deficient in at least two respects: by failing to properly investigate the case and by failing to properly advise him. In support of his failure to investigate claim, appellant argues his defense counsel failed to investigate a possible medical condition that may have been helpful to his case, failed to conduct discovery or interview the victim, and failed to obtain and view a videotape of the robbery.

Appellant=s mother testified during the motion for new trial hearing that at the suggestion of appellant=s defense counsel, she obtained copies of appellant=s medical records, which indicated that appellant had a learning disability and possible mental problems. Specifically, appellant=s mother testified that appellant suffered from attention deficit hyperactivity disorder. Although defense counsel told appellant=s mother that he could use those records, he ultimately returned the records to appellant=s mother and never used them. Defense counsel also testified at the motion for new trial hearing. He stated that initially he considered using the medical records as mitigating evidence, but after reviewing the records and discussing them with appellant, he decided not to do so. Defense counsel admitted that he never consulted with a medical professional in reaching this determination.

Appellant also claims that his counsel failed to conduct any discovery or to interview the complaining witness. According to appellant, defense counsel Adid nothing more than talk to his client and read the statement the victim had given.@ Defense counsel, however, explained that the victim=s statement was consistent with the story that his client had recounted. In addition, the State maintained an open file, and defense counsel reviewed that file.

**4**

Appellant=s mother testified that defense counsel failed to obtain the videotape of the robbery but repeatedly told her that he had the videotape and had viewed it. When she requested to view it, however, defense counsel told her that his copy was not very good and that he would have to request a new one from the prosecutor. Although appellant=s mother testified that she repeatedly asked to view the tape and made an appointment with defense counsel to view it at his office, defense counsel never provided appellant=s mother a copy of the videotape. Defense counsel testified that he planned to obtain the videotape and view it if the case proceeded to trial. Because it did not, he never asked to view the videotape.

Ordinarily, defense counsel should make an independent investigation of the facts of a case and not blindly rely on the veracity of his client=s version of the facts or the witness statements in the State=s file. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* (quoting *Strickland*, 466 U.S. at 691). A decision not to investigate Amust be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel=s judgments.@ *Id.* (quoting *Strickland*, 466 U.S. at 691). A conviction will not be reversed unless the failure to investigate resulted in the failure to advance the only viable defense available to the accused and there is a reasonable probability that the result of the proceeding would have been different but for the failure to advance the defense. *Id.* (quoting *Ex parte Duffy*, 607 S.W.2d 507, 517 (Tex. Crim. App. 1980); *Strickland*, 466 U.S. at 694).

Failure to personally interview a State=s witness does not deny effective assistance of counsel if witness statements were available and counsel concludes personal interviews are unnecessary. *Wilkerson v. State*, 726 S.W.2d 542, 550 (Tex. Crim. App. 1986). In this case, during the motion for new trial hearing, appellant testified that he confessed to committing the robbery to the police at the time of his arrest. He also agreed that there was no doubt that he was the perpetrator of the offense and that from the beginning, he told defense counsel that he was guilty of the offense. According to defense counsel, appellant=s recollection of the robbery was substantially similar to the complaining witness=s statement. The Supreme Court has instructed that the reasonableness of defense counsel=s actions, such as investigation decisions, may be substantially influenced by the defendant=s own statements or actions. *Strickland*, 466 U.S. at 691. Depending on the information provided by the defendant, the need for further investigation may be considerably diminished. *Id.* In light of appellant=s persistent admission of guilt, we cannot say that defense counsel=s decisions regarding the need for further investigation fell below the range of competence demanded.

Even if we were to assume that defense counsel=s decision not to investigate fell below an objective standard of reasonableness, we are not convinced that appellant would have refused to plead guilty and insisted on a trial but for his counsel=s ineffective investigation. Appellant never alleged that an interview with the complaining witness or a viewing of the videotape may have revealed a defense that he did not have the opportunity to assert. In fact, appellant admitted that he was the perpetrator of the offense. Furthermore, although appellant urges on appeal that the medical records could have had a significant impact on how defense counsel should have proceeded in the guilt-innocence phase or sentencing, before

**6**

the district court accepted appellant=s guilty plea, appellant informed the district court that he understood his rights including his right to a jury, that he had had sufficient time to confer with his attorney, and that he was freely and voluntarily pleading guilty. *See Graves v. State*, 803 S.W.2d 342, 346 (Tex. App.CHouston [14th Dist.] 1990, pet. ref=d) (appellant has ultimate authority to make decision to plead guilty). We hold that appellant failed to establish that defense counsel=s failure to investigate rendered his assistance ineffective.

Appellant claims his defense counsel failed to properly advise him because counsel failed to convey to appellant or his mother that the prosecution had offered a thirty-five-year plea bargain. In addition, appellant claims that his defense counsel repeatedly represented to him and his mother that appellant would be placed on probation. He never mentioned that appellant might be sentenced to serve time in a penitentiary. Furthermore, appellant claims his defense counsel took positions during the motion for new trial hearing that demonstrate his lack of understanding and candor.

During the motion for new trial hearing, appellant was asked: AHe [defense counsel] didn=t tell you the State would offer you 35 years as a plea agreement?@ Appellant answered, ANo.@ Appellant insisted that defense counsel never Acame to me with a plea.@ Defense counsel, on the other hand, testified that he discussed with appellant the plea bargain offered by the State Aimmediately after receiving [it],@ and Ahe [appellant] rejected that.@

Defense counsel=s failure to inform a criminal defendant of the State=s plea offer falls below an objective standard of professional reasonableness. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000). Here, however, the district court was presented with conflicting testimony. A trial court

**7**

enjoys broad discretion to consider the credibility of the witnesses at a motion for new trial hearing and may consider the interests and bias of any witness. *See Valle v. State*, 963 S.W.2d 904, 908 (Tex. App.CTexarkana 1998, pet. ref=d); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d). This Court must view the evidence in the light most favorable to the district court=s ruling and should not reverse it absent an abuse of discretion. Furthermore, the court assessed appellant a sentence of twenty-five years, rather than thirty-five years, and appellant testified at the motion for new trial hearing that he would not have accepted the plea bargain offered by the State. He did not assert that had he heard of the offer, he would have insisted on pleading not guilty and proceeding to trial. *Cf. Ex Parte Wilson*, 724 S.W.2d 72, 74 (Tex. Crim. App. 1987) (defendant established prejudice by stating he would have agreed to State=s plea bargain offer if he had been informed of offer).

In his affidavit in support of the motion for new trial, appellant stated that his defense counsel told him he would get probation but never told him that he could not get Astraight@ probation with a conviction for aggravated robbery, *see* Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g (a)(1)(F) (West Supp. 2002) (court cannot probate sentence if defendant convicted of aggravated robbery), never mentioned deferred-adjudication probation, *see id.* ' 5(a), and never explained the difference between probation and deferred adjudication. During the hearing on the motion for new trial, appellant testified that he had never heard of the words Adeferred adjudication@ before the sentencing hearing and that he was never informed of the difference between deferred adjudication and probation. When asked what defense counsel had told him regarding the possibility of being placed on probation by the court, appellant testified: AHe [defense counsel] told me that he was going to get me SAFPF [substance abuse felony punishment facility], boot

**8**

camp and probation but then before I went to court he said that he was just going to try to get me a regular probation.@  Appellant was also asked whether he thought there was any realistic chance of not getting probation and going to prison.  He responded: ANot as he [defense counsel] told me.@  Appellant further testified that he did not know what SAFPF entailed and his defense counsel never explained it to him.  On cross-examination, appellant was asked whether he would have pleaded guilty before a jury if he had known that the judge could not grant probation; appellant responded: AI guess.  I don=t know.@

Similarly, appellant=s mother testified that defense counsel Asaid he was going to go for SAFPF which meant nine months SAFPF and three months halfway house. . . .  And that=s what he was going to go for and the rest probation.@  She stated that defense counsel changed his strategy to request straight probation just before the sentencing hearing.

Beth Felks, the mother of another of defense counsel=s clients, also testified during the motion for new trial hearing.  She stated that defense counsel had told her that appellant would likely receive probation:

Q.  Did he [defense counsel] ever tell you anything about the possibility of [appellant] getting probation?

A.  Yes, sir.

Q.  And what did he tell you?

A.  He said [appellant] was a prime candidate for probation.

Q.  Did he ever mention the possibility of a prison sentence?

A.  No, sir.

**9**

In contrast, defense counsel testified that he told appellant Athere was a possibility of probation.@ He further stated: ABut it was my thinking that we were looking at around ten years but I told him there was an opportunity for probation, that it would be a deferred probation. We talked about what deferred probation was. We talked about conditions of a deferred probation. What it meant as far as a finding of guilty versus a finding of not guilty.@ When asked if he explained to appellant that a jury could recommend straight probation, but a judge could only grant him deferred adjudication, defense counsel answered that he did explain that to appellant.

Misinformation regarding a matter such as probation may render a guilty plea involuntary if appellant can establish that his guilty plea was induced by the misinformation. *Tabora v. State*, 14 S.W.3d 332, 336 (Tex. App.CHouston [14th Dist.] 2000, no pet.). A defendant does not receive ineffective assistance of counsel, however, simply because defense counsel advises the defendant to plead guilty under an expectation that the court will probate the sentence or impose a lighter sentence than is received. *Graves*, 803 S.W.2d at 345; *Medford v. State*, 766 S.W.2d 398, 401 (Tex. App.CAustin 1989, pet. ref=d). A defendant=s reliance on his attorney=s professional opinion does not render a guilty plea involuntary. *Graves*, 803 S.W.2d at 345; *Medford*, 766 S.W.2d at 401. Nor do unsuccessful strategies render a plea involuntary. *Graves*, 803 S.W.2d at 345. Appellant acknowledged that he was aware of the punishment range for the charged offense, and that neither the State, the court, the probation officer, nor the police promised him probation. Furthermore, defense counsel=s representations regarding appellant=s eligibility for probation do not constitute misinformation; although ordinary probation differs from deferred

**10**

adjudication, deferred adjudication is a form of probation. *See id.* at 344. Although appellant may have relied on defense counsel=s opinion of what type of punishment may be assessed and may have been disappointed in the punishment actually assessed, this does not render his counsel ineffective.

Finally, appellant argues that his defense counsel did not have a firm grasp of the law. At the motion for new trial hearing, appellant=s defense counsel was asked:

Q. [by appellate counsel] Okay. Explain to me why you needed their [the State=s] permission to do an open plea of guilty to a judge that you were going to for sentencing?

A. They [the State] were not going to waive a jury.

Q. What would be the function of the jury?

A. Well, if they weren=t going to waive a jury we would have to go to a jury on innocence or guilt.

Q. And your client would not be able to, not be allowed to plead guilty?

A. Well, not if they did not waive a jury, no.

Q. That=s your understanding of the law?

A. Yes.

. . . .

Q. So you=re saying they wouldn=t waive a jury that you=re going to plead guilty in front of?

A. Initially he wouldn=t waive a jury. We really didn=t want a jury.

Q. You said he would not waive a jury?

**11**

A. The State would not waive a jury.

Q. Okay. My question to you is: Why do you believe you needed their permission to enter a plea of guilty when you're going to the judge on punishment?

A. Well, they wouldn't let me plead guilty without waiving a jury, sir.

Q. And you believe you needed the State's permission to enter a guilty plea in front of a jury?

A. We could have went - - in order to plead, we had to have their permission to waive a jury or they were not going to waive a jury.

This line of questioning reveals that defense counsel may have been confused regarding the procedure when entering a plea of guilty. Nevertheless, this confusion does not suggest that appellant would have chosen to plead not guilty and insisted on a trial if he were advised differently.

## CONCLUSION

Appellant has not satisfied his burden to show that he received ineffective assistance of counsel. He failed to establish that his counsel's conduct fell below a reasonable standard of competence or that he did not knowingly and voluntarily choose to plead guilty. We therefore overrule his sole issue on appeal and affirm the district court's judgment of conviction.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   August 30, 2002

Do Not Publish