**Ex parte John LEMKE, Applicant.**

**Nos. 73594 to 73602.**

Court of Criminal Appeals of Texas.

March 8, 2000.

John Lemke, pro se.

Monica Tegeler Bar, Ganado, for appellant.

Bobby E. Bell, Dist. Atty., Edna, Matthew Paul, State's Atty., Austin, for State.

## *O P I N I O N*

MEYERS, J., delivered the opinion of the Court, joined by MANSFIELD, PRICE, HOLLAND, WOMACK, JOHNSON and KEASLER, J.J.

On December 13, 1993, applicant pled guilty to nine separate offenses: six for Unlawful Delivery of Cocaine and three for Possession of Cocaine. In exchange for his guilty pleas, the State recommended that applicant be sentenced to forty years confinement for each of the delivery offenses and twenty years confinement for each of the possession offenses, all to run concurrently. Applicant was sentenced in accordance with the State's recommendation.

On August 17, 1994, applicant filed in the district court an Application for Writ of Habeas Corpus (the "initial application"), alleging he was deprived of effective assistance of counsel on the ground that his trial lawyer had been disbarred at the time of his representation of applicant. The initial application was denied by this Court on May 17, 1995. Applicant filed in the district court a second application for writ of habeas corpus (the "instant application") on November 28, 1995.[1] In the instant application, applicant alleges he was denied effective assistance of counsel on the ground that his attorney did not inform him of plea bargain offers made by the State.[2] We ordered an evidentiary hearing and the trial court entered Findings of Fact. We dismissed the instant application on February 5, 1997. Applicant filed a Motion for Reconsideration (On the Court's Own Motion) of the Refusal to Grant Relief in Application for Writ of Habeas Corpus ("Motion for Reconsideration"), arguing that the instant application should not be barred as a "subsequent application" under Texas Code of Criminal Procedure article 11.07, section 4, because applicant did not become aware of the facts giving rise to the instant application until several months after the initial application was denied. We granted the Motion for Reconsideration and filed and set the instant application for submission.

## I. Section 4

■ We initially address whether the instant application is barred as a "subsequent application" under Section 4, or whether it falls within an exception to such bar. Section 4 provides, in relevant part:

(a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application, challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application[.]

(c) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

TEX.CODE CRIM. PROC. art. 11.07 § 4. Thus, we are barred from considering the merits of the instant application unless the facts giving rise to the claims made in the instant application (the existence of the State's plea bargain offers) could not have been presented in the initial application because they were "not ascertainable through the exercise of reasonable diligence on or before" the date of the initial application.

On May 27, 1994, applicant's trial attorney, William Satterwhite, Jr., was indicted in Jackson County for falsely holding himself out as an attorney to applicant. TEX. PENAL CODE § 38.122 (felony offense of Falsely Holding Oneself Out as a Lawyer); see Satterwhite v. State, 979 S.W.2d 626 (Tex.Crim.App.1998)(affirming Satterwhite's conviction under section 38.122). In August of 1995, several months after this Court's denial of the initial application, applicant was bench warranted to Jackson County to testify against Satterwhite pur

---

1. A First Amended Application was filed on January 8, 1996. We consider the First Amended Application as part of the "instant application."

2. Applicant also alleges his pleas were not the result of a knowing and voluntary waiver

since he had not been informed of the State's previous offers due to his ineffective counsel. This argument is not fully developed in the instant application, and we need not reach it given our resolution of this case based on applicant's ineffective assistance claim.

suant to the section 38.122 charges. During the course of preparing for such testimony, in a conversation with Jackson County District Attorney Robert E. Bell, the same district attorney who had prosecuted applicant's underlying conviction, applicant learned that the State had made two plea offers (for twenty and sixteen years) that were never communicated to him.[3] Applicant testified that during his pending cases Satterwhite had repeatedly told him that there were no plea bargain offers on the table. Applicant's wife also testified that she was present during many discussions between applicant and Satterwhite and at no time during those meetings did Satterwhite inform applicant of any plea bargain offers by the State for sixteen and twenty years.

■ "Reasonable diligence" within the context of Section 4 has not been defined or explored by this Court. The term suggests at least some kind of inquiry has been made into the matter at issue. *Cf. Anderson v. State*, 621 S.W.2d 805, 809 (Tex.Crim.App.1981)(in context of best evidence rule, stating that production of original document depends on circumstances of each case, the only requirement being that "all reasonable avenues of search should be explored to the extent that reasonable diligence under the circumstances would dictate" and holding that copy should be admitted where "a reasonable effort has been made to obtain the original and there is no suspicion that the copy might differ from the original" ); *Jordan v. State*, 520 S.W.2d 388 (Tex.Crim.App.1975)(viewing "reasonable diligence" by grand jury as some inquiry of the relevant witnesses on the issue). In the instant case, the plea bargain offers were not made a part of the record, so any review of the record would not have uncovered their existence. Applicant testified he asked Satterwhite during the pending cases whether the State had made any plea bargain offers, and Satterwhite told him repeatedly that the State had made no offers.[4] We hold applicant exercised "reasonable diligence" by making several inquiries of his lawyer as to the existence of plea bargain offers by the State. Applicant was not required to query the district attorney about the existence of a plea bargain offers when he had been assured by his attorney that there were none. Given that applicant had pre-

3. Bell testified in part:

The first time that I became knowledgeable that or at least it was brought to my attention that perhaps Mr. Lemke had not received the plea bargain offers that I had originally given was when Mr. Lemke was bench warranted back for William Satterwhite's trial. During our conversations in my office in preparation for trial, I casually mentioned to Mr. Lemke I never really understood why he seriously didn't consider the 16 years. It was at that time that Mr. Lemke told me there wasn't [sic] any offers on the table. I simply want the record to reflect that that's the first time I ever became aware that Mr. Lemke had not received or was alleging to have not received the offers. I did not know as we were progressing in the negotiations that Mr. Lemke was or was not receiving these offers.

4. While applicant's testimony on this issue is not as fully developed as it might have been, it is clear that he asked Satterwhite on more than one occasion about the existence of a plea bargain offer:

Q. [Defense counsel] I'm going to direct your attention to the day that you pled guilty on December 13, 1993 and ask if that was the day that these causes were set for trial by jury here in Jackson County, Texas?
A. [Applicant] Yes.
Q. And on that day, did you ask Mr. Satterwhite about any plea bargain in this case?
A. Yes, I did.
Q. And what did he tell you if there was a plea bargain in this case?
A. He said there was not a plea bargain.
Q. Did you insist that he discuss a plea bargain with the D.A. on that day?
A. Yes, I did.
Q. And did he refuse to do that?
A. Yes, he did.
Q. Did you ask about plea bargains during the time Mr. Satterwhite was representing you?
A. Yes, I did.
Q. And you met with him on several occasions?

viously asked his attorney about the existence of plea bargain offers, was told that none were made, and applicant otherwise did not doubt his attorney's representations,[5] applicant satisfied section 4's requirement of "reasonable diligence."

We conclude the instant application "contains sufficient specific facts establishing" that applicant's claim is one that could not have been presented in the initial application because the factual basis for the claim was "unavailable" (in that it was not ascertainable through the exercise of reasonable diligence) on the date the initial application was filed. We therefore address the merits of applicant's claim.

## II. Ineffective Assistance of Counsel

 In order to establish a claim for ineffective assistance of counsel, applicant must prove that (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's deficient performance resulted in prejudice to the defense. *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex.Crim.App.1987) (applying two-part test set forth in *Strickland v. Washington*,

466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674 (1984)). Failure of defense counsel to inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of professional reasonableness. *Id.* at 73–74 (failure of counsel to advise defendant of plea bargain offer by government constitutes "gross deviation from accepted professional standards"); *see also United States v. Blaylock*, 20 F.3d 1458, 1466 (9 th Cir.1994) (failure to communicate plea bargain offer constitutes unreasonable performance under prevailing professional standards); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7 th Cir.) (recognizing defense attorneys have duty to inform clients of plea agreements proffered by state and failure to do so constitutes ineffective assistance), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3 rd Cir.1982)(failure to communicate plea bargain offer is denial of 6 th and 14 th amendment rights); *Barentine v. United States*, 728 F.Supp. 1241, 1251 (W.D.N.C.)("feder-

A. Yes, I did.

5. The State questioned applicant about a bondsman who may have had knowledge of the sixteen year offer:

Q.[Prosecutor] Mr. Lemke, you're aware that David Egg is in the bonding business, are you not?
A.[Applicant] Yes.
Q. And he bonded you out, as a matter of fact?
A. No.
Q. What I'm asking you now, Mr. Lemke, is by way of explanation. I will be testifying in a minute as to what, if any, plea bargain offers were made to you. And in support of that, I'm going to ask you this question; do you recall at some point in time—and I don't know exactly when it was, but prior to the 40 years being offered to you and the 20 years—that Mr. Egg had made an inquiry of you as to why you wouldn't take the 16 years that was offered to you.
Did Mr. Egg ever mention to you, "Why don't you take the 16 years?"
And you said to him, "Because there's been no offer to that effect?"
A. Correct.

Q. My point being, if the 16 years wasn't on the table and hadn't been offered at some point in time, how would Mr. Egg know to say to you, "Why don't you take the 16 years?"
A. I have no idea.
Q. You do recall him saying that and you saying to Mr. Egg, "Well, the reason I haven't taken the 16 years is because there is no offer of 16 years."
Do you recall that?
Do you recall Mr. Egg saying something to you to the effect of, "You should have taken the 16 years" or "Why don't you take the 16 years"; and your response to Mr. Egg was, "Well, there is no offer to me of that amount"?
A. Correct.
Q. Okay.
The point to this line of inquiry by the State is not clear. Perhaps they were trying to show that applicant had some reason to doubt Satterwhite's representations that there were no plea bargain offers. However, applicant's responses to Mr. Egg's inquiries demonstrate (1) that applicant had not been told about any plea bargain offers, and (2) that applicant viewed Mr. Egg as simply mistaken about the existence of a plea offer.

al courts have been unanimous in finding that [defense counsel's failure to inform the defendant of a plea offer] constitutes a violation of the defendant's Sixth Amendment constitutional right to effective assistance of counsel"), *aff'd*, 908 F.2d 968 (4 th Cir.1990).

■ In its Findings of Fact on the instant application, the trial court found that (1) prior to applicant's guilty pleas, the State had conveyed to applicant's attorney a plea bargain offer of twenty years and an amended plea bargain offer of sixteen years; (2) applicant's attorney never advised applicant of the State's plea bargain offers of twenty and sixteen years; (3) applicant would have accepted the State's proposed plea bargain offer of twenty years, if it had been conveyed to him; (4) applicant would have accepted the State's amended plea bargain offer of sixteen years, if it had been conveyed to him; and (5) at the time applicant entered his pleas of guilty on December 13, 1993, in exchange for a plea bargain offer of forty years as to the six delivery offenses and twenty years as to the three possession offenses, applicant was not aware of and had not been advised of, any prior plea bargain offers by the State.

■ The trial court's findings are supported by the record. While this Court is not bound by the findings of a habeas court, we should follow them where they are supported by the record. *Ex parte Minott*, 972 S.W.2d 760, 761 (Tex.Crim. App.1998); *Ex parte Torres*, 943 S.W.2d 469, 476 (Tex.Crim.App.1997); *Ex parte Brandley*, 781 S.W.2d 886 (Tex.Crim.App. 1989), *cert. denied*, 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990); *Ex parte Adams*, 768 S.W.2d 281 (Tex.Crim.App. 1989). We therefore accept the trial court's findings that the State conveyed two plea bargain offers to applicant's attorney (the first offer was for twenty years, and the second offer for sixteen years) that were never communicated to applicant, and that applicant would have accepted either offer had they been communicated to him. Satterwhite's failure to inform applicant of the State's plea bargain offers was an omission that fell below an objective standard of reasonableness. *Wilson*, 724 S.W.2d at 74.

■ The further question is whether applicant was prejudiced by Satterwhite's unprofessional conduct. While a trial court is not obligated to accept the terms of a bargain reached by the parties, courts generally have not required that the defendant show the trial court would have accepted a plea bargain in establishing prejudice in these circumstances. The prevailing view is that a defendant is prejudiced by the missed opportunity of accepting such bargain and presenting it to the trial court for consideration in sentencing.[6] *Caruso*, 689 F.2d at 438 ("[f]ailure

---

**6.** One court suggested, but didn't decide, that a defendant may be required to prove the trial court would have accepted the plea bargain. *Compare Alvernaz v. Ratelle*, 831 F.Supp. 790, 792–93 (S.D.Cal.1993)(stating that in order to prove prejudice resulting from defense attorney's failure to inform petitioner of plea bargain offer, petitioner was required to show (1) that he would have accepted the offer, and (2) that trial court would have accepted the plea)) *with id.* at 796 (holding that "this Court does not decide whether a petitioner must demonstrate that a trial court would have accepted the plea offer to prove prejudice" because "assuming such a requirement exists," petitioner met the requirement). Another court explicitly declined to place a burden on the petitioner to prove the trial court would have accepted the plea agreement, but allowed the State the opportunity to prove the trial court would not have accepted the arrangement:

> [W]e are unpersuaded by the State's argument that [petitioner] failed to prove prejudice because he did not establish that the state trial court would have approved the two-year plea arrangement. Although the State is correct in stating that a plea agreement must be approved by the trial court before it becomes dispositive [citations omitted], we do not believe that [petitioner] was required to demonstrate a reasonable probability that the trial court would have approved the two-year plea arrangement. [citation omitted] We know of no case or statute that imposes such a requirement and we think it unfair and unwise to require litigants to speculate as to

by defense counsel to communicate a plea offer to defendant deprives defendant of the opportunity to present a plea bargain for the consideration of the state judge and, on acceptance by the state judge, to enter a guilty plea in exchange for a lesser sentence"); *State v. Simmons*, 65 N.C.App. 294, 309 S.E.2d 493, 498 (1983) (because of attorney's failure to inform defendant of plea bargain offer, defendant was "denied the opportunity to accept the plea offer, which, according to his affidavit, he would have accepted" and in this regard defendant was "clearly prejudiced"). Applicant was deprived of the opportunity of accepting the State's twenty year plea bargain offer and presenting it to the trial court for consideration in setting applicant's sentence. We hold applicant was prejudiced in this respect. *Caruso, supra.*

### III. Remedy

 Courts have held that tailoring the remedy to the injury suffered where defense counsel failed to convey a plea bargain offer means reinstating the offer:

> how a particular judge would have acted under particular circumstances.[fn]
> We find it much more significant that the State can point to no evidence that indicates that the state trial court would not have approved the two-year plea bargain arrangement. We believe that, if the State wishes to suggest that the trial court would not have approved this plea arrangement, the State, and not [petitioner], bears the burden of persuasion. The prosecution may, therefore, argue that a prisoner, who has established a reasonable probability that, but for his counsel's ineffective assistance, he would have accepted a plea arrangement offered by the prosecution, was nevertheless, not prejudiced because the trial court would not have approved the plea arrangement. To prevail on such an argument, however, the prosecution must offer clear and convincing evidence that the trial court would not have accepted the plea arrangement.

*Turner v. Tennessee*, 858 F.2d 1201, 1207 (6th Cir.1988), *cert. granted and judgment vacated*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989). We do not view after-the-fact

If, after the evidentiary hearing, [the applicant] prevails on his ineffective assistance claim, the district court will have to fashion a remedy that is "tailored to the injury suffered from the constitutional violation and should not necessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). Since the remedy for counsel's ineffective assistance should put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred, in certain circumstances granting a new trial may not be the appropriate remedy. Several courts have recognized that where the ineffective assistance occurred *before* trial, as in cases where the harm consisted in defense counsel's failure "to communicate a plea offer to defendant, ... [granting a] subsequent fair trial does not remedy this deprivation." *Caruso*, 689 F.2d at 438 (citation omitted). *See also, Alvernaz v. Ratelle*, 831 F.Supp. 790, 797–99 (S.D.Cal.1993)(Rhoades, J.) (granting specific performance of original plea offer)(citing cases); *Turner*, 858 F.2d at

speculation into whether or not the trial court would have granted the plea bargain as particularly meaningful. Even if a trial judge were to testify that he would not have accepted the plea bargain, the existence of the plea agreement might have affected his judgment as to the sentence he would have ultimately imposed. It makes more sense to reinstate the plea offer and if accepted by the defendant, allow the trial judge the opportunity to accept or reject it at that point.

The single case in which this issue has previously arisen before this Court provides no guidance. In *Wilson*, 724 S.W.2d at 74, we held that the applicant's statement that "he would have agreed to the plea bargain offer and would have had to serve thirteen years rather than life ... shows that applicant has suffered prejudice due to counsel's failure to inform him of the State's offer." It is not clear whether the applicant's assertion that he "would have had to serve thirteen years rather than life" was based on evidence that the trial court would have accepted the plea agreement or was simply an assumption on the applicant's part that the trial court would have accepted the agreement.

1208 (requiring reinstatement of the original plea offer unless the prosecution can show nonvindictive reasons for withdrawing the offer).

Requiring the government to reinstate its original plea offer is constitutionally permissible. [citations omitted] Thus, where, as here, the defendant was deprived of the opportunity to accept a plea offer, putting him in the position he was prior to the Sixth Amendment violation ordinarily will involve reinstating the original offer. The government may of course, in proper cases, seek to demonstrate that intervening circumstances have so changed the factual premises of its original offer that, with just cause, it would have modified or withdrawn its offer prior to its expiration date....[7]

Requiring the government to reinstate its original offer would also accommodate the policy articulated by the Supreme Court in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), where the Court held that "[t]he Constitution constrains our ability to allocate as we see fit the cost of ineffective assistance. The Sixth Amendment mandates that the State [or the government] bear the risk of constitutionally deficient counsel. *Id.* at 379, 106 S.Ct. at 2585. Under *Kimmelman*, even if one might perceive that the government's competing interest might be infringed by requiring that the original offer be reinstated, a contrary result would impermissibly shift the risk of ineffective assistance from the government to [the defendant].

*Blaylock*, 20 F.3d at 1468–69. We agree with this rationale and hold the harm suffered as a result of applicant's ineffective counsel is best redressed by reinstatement

of the State's plea bargain offer of twenty years.[8]

Relief is granted. These causes are remanded to the trial court with orders that the trial court withdraw applicant's pleas, require the State to reinstate its twenty year plea bargain offer,[9] and allow applicant to re-plead to the indictments in these causes.

KELLER, J., concurs in Part I and otherwise joins the opinion.
McCORMICK, P.J., concurs.

---

7. The State makes no such allegations in this case. The State has not responded to the instant application.

8. Because applicant testified he would have accepted the twenty year plea bargain if it had been offered, we do not provide for reinstatement of the plea bargain offer of sixteen years, which was made subsequent to the twenty year offer.

9. District Attorney Bell testified that the plea bargain offer was for "20 years in each of the captioned causes to run concurrently."