Affirmed and Opinion filed August 16, 2005









Affirmed and Opinion filed August 16, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00086-CR

____________

 

CHRISTOPHER TRAVIS
CRAVEN,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court

Harris County, Texas

Trial Court Cause No. 897,533

 



 

O P I N I O N

Appellant, Christopher Travis Craven, pled
guilty to the offense of murder.  See Tex. Pen. Code Ann. ' 19.02 (Vernon
2004).  As part of a plea agreement, the
trial court ordered a presentence investigation and capped appellant=s punishment at 40
years= confinement.  At the conclusion of the PSI hearing, the
court entered a finding of guilt and sentenced appellant, in accordance with
his agreement, to 35 years= imprisonment in
the Texas Department of Criminal Justice, Institutional Division.  We affirm.








The record reflects that on the morning of
December 23, 2001, appellant and his father, Jack Craven, were engaged in a
boisterous quarrel.  The disturbance
began inside Jack Craven=s house but proceeded outdoors where
appellant pursued his father with a walking stick.  While the verbal exchange continued,
appellant followed his father into a nearby garage and started beating him with
the stick.[1]  After several blows, an unidentified
individual came out of the house and persuaded appellant to cease the
assault.  Appellant complied with the
request and returned inside the house.

However, shortly thereafter, appellant
came back outside carrying a shotgun.  He
again pursued his father, who was seated on a motorcycle attempting to start
it.  Appellant walked up to his father
and put the shotgun barrel directly against his father=s back.  The senior Craven immediately raised his
hands in the air, and appellant nudged him once with the gun barrel.  Appellant again shoved the shotgun barrel
into his father=s back, called him an expletive, and this
time pulled the trigger.  Appellant then
lowered the shotgun and simply walked back inside the house.  Appellant=s father was later
pronounced dead upon arrival at the hospital.

In his sole point of error, appellant
complains that he was provided ineffective assistance of counsel and that, as a
result, his guilty plea was entered involuntarily.  Specifically, he claims that counsel
misunderstood the law of sudden passion and as such, provided an erroneous
guarantee that appellant could be punished with a sentence consistent with that
of manslaughter, i.e., no more than 20 years.[2]








Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  See U.S. Const. amend. VI; Tex.
Const. art. I, ' 10; Tex.
Code Crim. Proc. Ann. art. 1.05 (Vernon 1977).  The right necessarily includes the right to
reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686 (1984).  Claims of ineffective assistance of counsel
are evaluated under the two‑step analysis articulated in Strickland v.
Washington.  First, appellant must
demonstrate counsel=s performance was deficient and not reasonably
effective.  Id. at 688B92. 
To satisfy this step, appellant must identify the acts or omissions of
counsel alleged as ineffective assistance and affirmatively prove they fell
below the professional norm of reasonableness. 
See id.; McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996).  Second, appellant must
demonstrate the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 693.  To establish prejudice, an appellant must
prove that but for counsel=s deficient performance, the result of the proceeding would
have been different.  See id.
at 694; Lemke v. State, 13 S.W.3d 791, 796 (Tex. Crim. App. 2000).

Judicial scrutiny of counsel=s performance must be highly
deferential and we are to indulge the strong presumption that counsel was
effective.  See Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002); Mallett v. State, 65
S.W.3d 59, 63 (Tex. Crim. App. 2001). 
We assume counsel=s actions and decisions were reasonably professional, and
that they were motivated by sound trial strategy.  Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994) (en banc). 
Appellant has the burden of rebutting this presumption by presenting
evidence illustrating why trial counsel did what he did.  See id. at 771.








A counsel=s ineffectiveness may also render a plea of guilty
involuntary.  See, e.g., Ex parte Moody, 991 S.W.2d 856,
857B58 (Tex. Crim.
App. 1999); Nicholas v. State, 56 S.W.3d 760, 769 (Tex.
App.CHouston [14th
Dist.] 2001, pet. ref=d).  AWhen a defendant challenges the
voluntariness of a plea entered upon the advice of counsel, contending that his
counsel was ineffective, >the voluntariness of the plea depends on (1) whether counsel=s advice is within the range of
competence demanded of attorneys in criminal cases and if not, (2) whether
there is a reasonable probability that but for counsel=s errors, he would not have pleaded
guilty and would have insisted on going to trial.=@ 
Ex parte Moody, 991 S.W.2d at 857B58 (quoting Ex
parte Morrow, 952 S.W.2d 530, 536 (Tex. Crim. App.1997)); see also
Nicholas, 56 S.W.3d at 769.  Thus,
appellant must prove that his counsel=s representation
fell below a reasonable standard of competence and that he would have pleaded
not guilty had he been
properly advised with respect to the law of adequate provocation.  See Nichols, 56 S.W.3d at 769.

In addressing his contention that counsel=s representation was deficient,
appellant timely filed a motion for new trial. 
In the motion, appellant averred that his trial counsel, Jonathan
Munier, Acoerced@ him into pleading guilty based on a
guarantee that appellant would be convicted of manslaughter.  At the hearing on appellant=s Motion for New Trial, appellant
testified AMr. Munier told me, assured me that I
would get manslaughter if I took the PSI. 
He assured me that he knew the Judge and that she would give me
manslaughter.@ 

However, there are ample indications in the record that
appellant became dissatisfied only after he received a harsher sentence
than anticipated.  Thus, appellant fails
to sustain the heavy burden of proving he received ineffective assistance of
counsel in relation to his plea.  See
Jack v. State, 871 S.W.2d 741, 743 (Tex. Crim. App. 1994) (explaining that
a court is to examine only those acts of counsel which took place prior to
entry of the plea); Enard v. State, 764 S.W.2d 574, 575B76 (Tex. App.CHouston [14th Dist.] 1989, no pet.)
(holding that a guilty plea is a matter of trial strategy and, by itself, will
not support a claim of ineffective assistance despite the fact that the
defendant received a greater sentence than expected).








The record, for example, reflects that appellant was clearly
admonished in writing about his plea and its effects.  These written admonishment were signed by
both appellant and Munier and confirm that appellant understood the admonitions
and was aware of the consequences of his plea. 
See Tex. Code Crim. Proc.
Ann. art. 26.13 (Vernon Supp. 2004B05). 
Appellant specifically initialed that he understood he was Acharged with the felony of murder@ and that the range of punishment for
the offense was Aimprisonment for life or any term of not more than 99 years
or less than five years. . . .@  He further
acknowledged that he Afreely, knowingly, and voluntarily executed this statement in
open court with the consent and approval of my attorney@ and that he Aunderstood the foregoing
admonishments and [was] aware of the consequences of [his] plea. . . .@ 
More importantly, he agreed that he was Atotally satisfied with the
representation provided by [his] counsel and [he] received effective and
competent representation.@ (emphasis added). 
Such written admonishments are prima facie evidence of a knowing and
voluntary plea and of effective representation.  See Martinez v. State, 981 S.W.2d
195, 197 (Tex. Crim. App. 1998).

In addition, appellant testified at the PSI hearing that he
understood he pled guilty to murder and that, based on his plea, the court
could adjudicate him guilty of murder. 
He also explained on cross-examination at the hearing for new trial that
while Munier Aassured@ him of the lesser conviction, he
never Apromised@ that appellant would not be
convicted of murder.  Moreover, appellant
explicitly admitted that he was Ahappy with [Munier=s] representation until the end of
the PSI. . . .@ 
Logically, then, appellant=s ultimate complaint is that he
received a harsher sentence than anticipated and only then did he become
displeased with Munier=s performance.








Of equal importance is Munier=s own testimony regarding his
representation of appellant.  Munier
testified that he fully investigated appellant=s case.  He explained that this consisted of the
following actions: (1) reading the offense report, (2) reading the autopsy
report, (3) looking at all of the photographs, (4) reviewing all of the State=s documentary evidence, (5) obtaining
a court-appointed private investigator, (6) personally going to the scene of
the offense on three separate occasions, (7) contacting and canvassing
witnesses, (8) interviewing appellant=s family members, and (9)
interviewing and discussing the case with appellant several times.  Munier further explained why he did not
develop any defensive theories other than sudden passion/adequate provocation,
specifically discounting the ideas of self-defense, defense of others, defense
of property, diminished capacity, and accidental dischargeCeven going as far as having the
shotgun tested for ballistics and trigger sensitivity.  Munier explained that, based on the facts of
the case, he believed appellant=s best defense was sudden passion/adequate provocation.[3]  Based on this theory, Munier explained that
he suggested that appellant plead guilty in return for a PSI and a cap on
punishment with the hope that the judge would find sudden passion.  Finally, contrary to appellant=s contention, Munier stated that he Abelieved [a manslaughter punishment]
was a realistic possibility under the law and the facts@ but explained that he made no
promises or guarantees to appellant.  








The trial court heard all the evidence regarding Munier=s representation and, as the
exclusive trier-of-fact, was entitled to weigh the credibility of the witnesses
and believe Munier=s testimony over appellant=s. 
See Reissig v. State, 929 S.W.2d 109, 113 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d); see also Dusenberry v. State,
915 S.W.2d 947, 951 (Tex. App.CHouston [1st
Dist.] 1996, pet. ref=d). 
 It impliedly did so when it denied appellant=s motion for new trial.  Because we find that there is ample evidence
in the record to support a finding that appellant received representation
within the bounds of professional reasonableness, we refuse to overturn the
trial court=s ruling.  We also find that there is insufficient
indicia that appellant was harmed by counsel=s representation despite receiving a
higher than expected sentence.  See
Enard, 764 S.W.2d at 575 (AA guilty plea is a matter of trial strategy.  Defense counsel=s unsuccessful strategy in advising a
client to plead guilty will not render the plea unknowing or involuntary even though
the defendant is sentenced to a greater sentence than expected.@). 
Accordingly, we overrule appellant=s sole point of error.

The judgment of the trial court is affirmed.

 

 

 

_____________________________

J. Harvey
Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed August 16, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The trial
court heard somewhat conflicting testimony regarding the beating.  Appellant testified that he also became a
victim when his father used a garden hoe to strike him several times.





[2]  Adequate
provocation reduces a murder conviction from a first degree to a second degree
felony.  Tex. Pen. Code Ann. '
19.02(d) (Vernon 2003).  Likewise,
manslaughter is considered a second degree felony.  Id. '
19.04.  As such, a murder conviction with
sufficient proof of an adequate cause, like a manslaughter conviction, would
have required that appellant be sentenced to imprisonment for not  less than 2 and not more than 20 years.  See id. ' 12.33.





[3]  Counsel based
this theory on several factors, some of which include a known history of abuse
against appellant by his father and the fact that appellant testified that he
was again a victim during the incident. 
Counsel also suggested to the trial court that the case was not a
typical murder case because there was no question that appellant shot and
killed his father.  Therefore, counsel
explained he was utilizing the most plausible defensive theory he believed was
supported by the facts.  We will not find
error in this strategy simply because it was not as successful as either
appellant or his attorney desired.  See
Dickerson v. State, 87 S.W.3d 632, 637 (Tex. App.CSan Antonio 2002, no pet.) (AThe fact that another attorney
might have pursued a different course of action or tried the case differently
will not support a finding of ineffective assistance of counsel. . . . Any
error in trial strategy will be deemed inadequate representation only if
counsel=s actions lack any plausible basis.@) (citations omitted) (emphasis
added).