# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00055-CR

### Ex parte Aurelio Vargas Berumen

**FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
NO. 99-522248, HONORABLE MIKE DENTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Aurelio Vargas Berumen appealed from the trial court's order denying his application for writ of habeas corpus. He complains that he received ineffective assistance of counsel in his trial, which occurred in 1999, and that the court should have granted his application, allowing him to withdraw his 1999 plea of nolo contendere, requiring the State to reinstate an earlier plea agreement, and allowing him to re-plead under the reinstated offer. We affirm the trial court's order denying habeas relief.

Berumen is a Mexican citizen who has been living in the United States under a permanent-resident "green card" since 1971, when he was four years old. In 1999, he was charged with assaulting his wife, a misdemeanor offense. He entered a plea of nolo contendere and was sentenced to one year imprisonment, probated for two years. Berumen completed his term of probation without incident. However, in 2008, he filed an application for writ of habeas corpus, challenging the validity of the misdemeanor conviction on grounds that he received ineffective assistance of counsel. Berumen explained that the conviction prevented him from becoming a

naturalized citizen and, in fact, placed him at risk for immediate deportation because a sentence of a year or more, even if probated, is seen as an aggravated felony for immigration purposes.

Berumen claimed that his trial counsel provided ineffective assistance, alleging that the attorney did not inform Berumen of two plea offers made by the State, the first offering a 180-day jail sentence and the second offering a 90-day jail sentence, both of which would have avoided the collateral immigration consequences he faces as a result of the one-year probated sentence. He claimed that he was prejudiced by this deficient performance because he was deprived of the opportunity to present the plea offers to the court for sentencing consideration. He recently lost his wallet and had to apply for a new green card. It was at that point he learned about the immigration consequences of his 1999 sentence.

At the hearing on his petition, Berumen testified about the entry of his 1999 plea and his recollection of his communications with his attorney. He testified that he hired Dain Whitworth to represent him after he was charged with assault for an incident arising out of an argument with his then-wife and a man she had been dating while still married to Berumen. Berumen said that he got into an argument with his wife's boyfriend and when his wife stepped in, Berumen accidentally pushed or hit her and was charged with assault on a family member. Berumen testified that he only remembered having to come to court once, the day he entered his plea of nolo contendere. He said that on that day, his wife and her boyfriend were present and ready to testify, but as a result of his plea, they were never called. Whitworth told Berumen "that I was going to get a year with probation and he was going to try to get me probation so I wouldn't be in jail." Berumen testified that Whitworth never told him of any plea offers by the State. Asked whether he would have taken an

2

offer for ninety days' imprisonment, he said, "Yeah probably." Berumen was asked on cross-examination, "[A]re you saying today that you would have rather done 90 days in jail instead of being on probation and being out?" Berumen answered, "Well I didn't want to — I mean of course it's just like the Judge said you don't want no jail time, but if this [was] explained to me, I didn't understand the situation, I probably would have done it if I would have known it affected me on immigration of course, who wouldn't do 90 days in jail to make sure you live where you want to live." Berumen did not recall whether the year sentence was negotiated or something that the trial court determined without a plea recommendation. He was also asked about an admonishment related to deportation contained in the plea documents he signed and said, "You know, I didn't read it. . . . I didn't realize it was on there, I mean I didn't read it[.] I didn't realize it."[1]

The State offered an affidavit prepared by Whitworth about his representation of Berumen. In that affidavit, Whitworth said he remembered Berumen's name but not the facts of the case, nor did he still have a file for the case. Whitworth stated that it was his practice to ask defendants about their citizenship status and to inform non-citizens that "a conviction would cause them to be deported or denied citizenship" and to recommend that they consult with an immigration lawyer. He also stated that before allowing a client to enter a plea of guilty or nolo contendere, he always reviewed the papers with the client, including the deportation admonishment. He averred that

---

[1] The plea document that Berumen signed states, "I understand that if I am not a citizen of the United States that my plea may result in deportation, the exclusion of admission to this country, or denial of naturalization under federal law. There have been no promises made to me by my defense attorney, the prosecutor or the Court concerning any stay in the United States."

3

it was always his policy "to attempt to negotiate the absence of a family violence finding before entering a plea" and that he believed he made those efforts on Berumen's behalf. He concluded,

> To the best of my memory, Mr. Berumen's case was set for a trial at his request, and I wanted the State to indicate what acts it was relying upon to constitute recklessness prior to trial. Therefore, I file[d] a motion to quash the information and in response to the motion, the State abandoned the "reckless" allegation. It is my belief, although I am not certain, that Mr. Berumen wanted a trial but changed his mind on the day the trial was set when the witnesses were present.

The only other witness called at the hearing was John Castro, a Travis County prosecutor who brought Berumen's 1999 case file from the county attorney's office. He testified that the inside of the file's jacket included "notations as to various plea offers" made by the State. He said, "It looks like to the best of my knowledge, that there is a recommendation made on March 24th of 1999. The recommendation reading to be 180 days plus Batterer's Intervention Program, plus Court costs, plus a finding of family violence." He said the next plea notation "looks like in June 1st of 1999, a plea offer was made or written down any way, of 90 days plus Batterer's Intervention Program, plus Court costs, plus a family violence finding." When asked how the case was eventually resolved, he said, "I was not around in that time, but it's my understanding that there was a plea of no contest . . . [and] that the defendant was sentenced to two years probation." The file did not reflect whether the sentence imposed was the result of a plea bargain, but he agreed that there were "no additional plea offers reflected in the file other than the two that [he] mentioned."

We review a trial court's decision on a writ of habeas corpus for an abuse of discretion, affording "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of

4

credibility and demeanor." *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). A trial court may make findings of fact, either verbally or in writing, but if no explicit findings are made, we should defer to implicit findings that support the court's ruling, provided that the record supports the implicit findings and allows us to determine what those findings were.[2] *Id.* at 819 & n.68; *see also Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006) (habeas proceeding in which court of criminal appeals noted that reviewing court should defer to trial court's implied findings that are supported by record). The trial court, as arbiter of witness credibility, may accept or reject all or any part of a witness's testimony. *Peterson*, 117 S.W.3d at 819 n.68; *see Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) ("Under the abuse of discretion standard, appellate courts defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts. . . . [T]he trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted. The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. And all of the evidence must be viewed in the light most favorable to his ultimate ruling.").

To prevail on a claim of ineffective assistance of counsel, a criminal defendant has the heavy burden of proving both that his attorney's performance fell below an objective standard

---

[2] Although we recognize that a trial court that denies an application for writ of habeas corpus should, unless the application is frivolous, enter findings of fact and conclusions of law, *see* Tex. Code Crim. Proc. Ann. art. 11.072, § 7(a) (West 2005); *see also Ex parte Rodriguez*, 195 S.W.3d 700, 700-01 (Tex. Crim. App. 2006) (noting that cause had been abated to trial court for entry of findings), in this case, Berumen did not request findings or otherwise alert the trial court to their absence, nor does he complain of their absence on appeal.

of reasonableness and that the deficient performance prejudiced the defense. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000). Courts have held that a defense attorney's failure to "inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of professional reasonableness." *Id.*

In this case, the record does not establish that the 180-day and 90-day offers were ever official offers passed along by the State to Whitworth. The only evidence is that there were notes made inside the State's jacket for the case, but there was no evidence about when or whether those offers were passed along to Whitworth or when he rejected them. Further, although Berumen was asked whether Whitworth told him that the State had made offers of 180 and 90 days imprisonment, and he answered, "No he didn't," the trial court was not obligated to accept Berumen's testimony as true. *See Cantu*, 253 S.W.3d at 282. The trial court noted that Berumen's testimony regarding Whitworth and whether he informed Berumen of a plea offer "wasn't an ironclad statement he didn't give it to me, it seemed to me to be more of a 'I don't recall.'" The trial court further opined, "[I]f ever there was any lawyer in this county that everybody thought was the leading light in doing things the right way, of course it was Mr. Whitworth. So if I were to make a supposition or guess how he worked, I of course can only assume he did it exactly right . . . ." Finally, the trial court noted that there was little evidence related to when or whether the State's offers were made. Thus, the evidence does not establish that Whitworth's performance related to offers allegedly made in Berumen's case was deficient. *See Lemke*, 13 S.W.3d at 795.

More importantly, even if we assume that the State's offers were passed along to Whitworth, who neglected to inform Berumen of the terms of those offers, when asked whether he

6

would have taken the 90-day offer, Berumen answered, "Yeah probably." That equivocal testimony was further undermined when, on cross-examination, he agreed that at the time he entered his plea, he would have preferred not to spend time in jail but that he would have accepted it if someone had fully explained the immigration consequences of his plea and sentence. The plea documents informed Berumen that his plea could have adverse immigration consequences, and Whitworth averred that his usual practice was to recommend that his clients consult an immigration attorney. Berumen did not testify that he did that, and his testimony that he did not even read his plea documents strongly suggests that he did not consult with anyone about any possible impact on his immigration status. Thus, Berumen's testimony, even taking it as true, did not establish that, at the time he entered his plea in exchange for one year of probation, he would have acted any differently or would have preferred three months of jail time to the terms of probation. Even if the State made full-fledged plea offers and Whitworth failed to inform Berumen, there is nothing in the record to show that Berumen was deprived of an opportunity to ask the trial court to sentence him to a short jail term rather than placing him on probation. *See id.* at 796 (defendant is prejudiced by failure to pass along plea offers by "missed opportunity of accepting such bargain and presenting it to the trial court for consideration in sentencing"). Indeed, Berumen's testimony establishes that at the time he entered his plea, he was well aware of the possibility of receiving either jail time or probation. Further, in discussing Berumen's testimony, the trial court observed, "[W]hen your client testified and was asked by defense counsel, okay but let's be honest faced with jail or probation which would you take, even your own client said well gee I would take probation." Thus, Berumen cannot show that he was prejudiced by his attorney's alleged deficient performance. *See id.* at 795.

7

Because Berumen has not carried his heavy burden of showing that his attorney's performance was deficient or that it prejudiced Berumen, the trial court did not abuse its discretion in denying Berumen's application for writ of habeas corpus. We affirm the trial court's order.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: April 2, 2010

Do Not Publish