Opinion issued November 1, 2012.



In The

# Court of Appeals

For The

# First District of Texas

—————————————

NOS. 01-11-00720-CR
01-11-00721-CR
01-11-00722-CR
01-11-00723-CR
01-11-00724-CR

—————————————

**ANTHONY QUINN MARENO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Case Nos. 64,046, 64,296, 64,297, 64,298, & 64,299

## MEMORANDUM OPINION

Anthony Quinn Mareno appeals his conviction for one charge of burglary of a habitation and four charges of burglary of a building. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011). Mareno pleaded not guilty, and the State consolidated the five charges for trial. A jury found Mareno guilty on all five charges and, with enhancements, assessed his punishment at sixty years in prison for the burglary of a habitation charge and ten years for each of the four burglary of a building charges, with the sentences to run concurrently. After sentencing, Mareno filed a motion for new trial, alleging that, among other things, his trial counsel rendered ineffective assistance by failing to advise Mareno of all pre-trial plea bargain offers. After an evidentiary hearing on trial counsel's representation, the trial court issued a written order denying the motion, but made no express findings of fact. In his sole issue on appeal, Mareno contends that his trial counsel rendered ineffective assistance of counsel by failing to properly advise him of all pre-trial plea bargain offers. Finding no abuse of discretion in the trial court's denial of the motion for new trial, we affirm.

## Background

From June through November 2010, a series of five burglaries occurred within one mile of Mareno's residence in Brazoria County. In one incident less than a half mile from Mareno's residence, officers stopped Mareno at 4:00 a.m. within sight of one of the burglarized buildings when police were responding to a

2

burglary alarm. The burglary victims reported that various items were missing from each of the burglarized properties. Within days of the burglaries, Mareno pawned, or attempted to pawn, the stolen items at different pawn shops. Employees of three different pawn shops identified Mareno as the seller of the items. The items were identified as the stolen property reported missing from the burglarized properties by serial numbers and other unique characteristics. In addition, one of the burglarized property owners recognized Mareno from a previous encounter in which Mareno offered to mow his yard. Mareno was indicted on one charge of burglary of a habitation and four charges of burglary of a building.

During arraignment, the trial court asked Mareno whether he had an opportunity to speak with his trial counsel, Ken Bishop, about the State's motion to consolidate the cases. Mareno responded, "Not really," and the court halted the proceedings to allow Mareno to confer with Bishop off the record about the State's motion. After agreeing to the consolidation and upon hearing the explanation of the five charges and enhancement paragraphs from the trial court, Mareno pleaded not guilty to all five charges. The prosecutor then stated for the record that, the day before arraignment, the State made a plea offer to Mareno's counsel. The offer was twelve years' incarceration for all cases and an agreement by the State to waive enhancements on the burglary of a habitation charge. The State further

3

noted that the twelve-year offer had expired on the previous day and that Mareno's previous attorney, Michael Diaz, had rejected the State's previous offers of twenty-five years for the burglary of a habitation charge and eighteen years for the burglary of the building charges. The prosecutor stated that Mareno's current trial counsel, Bishop, had negotiated the plea to twelve years and that Bishop conveyed that offer to Mareno who rejected it. Upon hearing this, Bishop asked the trial court if he could have a couple of minutes with Mareno in the jury room because he did not want to "squander too much of the Court's valuable time here." The trial court agreed. Once back on the record, the prosecutor, wanting to "make it clear that that offer expired yesterday," reiterated that Mareno had rejected the State's twelve-year offer. The trial court then asked whether Bishop needed to put anything on the record, and Bishop replied, "No."

After arraignment and jury selection, the trial began, and, the next day, the jury found Mareno guilty on all five charges. The following day, the punishment phase began. Mareno pleaded "true" to enhancement paragraphs alleging prior felony convictions, including prior burglary charges, and the jury assessed his punishment at sixty years in prison for the burglary of a habitation charge and ten years in prison for each of the four burglary of a building charges.

Mareno's appointed appellate counsel filed a motion for new trial, in which he alleged that Mareno was denied effective assistance of counsel. The motion

4

enumerated thirteen deficiencies in Bishop's performance, including failing to advise Mareno of all pre-trial plea bargain offers.

The trial court held an evidentiary hearing on Mareno's motion, during which several witnesses testified. Bishop testified about his trial preparation and strategy and his pre-trial communications with Mareno. He testified that there were a number of plea offers and that Mareno "just rejected them, rejected them, rejected them." Bishop stated that the best offer that the State made to him was twelve years. Bishop testified that he advised Mareno of the twelve-year offer. When asked what he would say if someone came forward to contradict his testimony and state that he admitted to Mareno that he did not inform him of the twelve-year offer, Bishop responded,

> That wouldn't be accurate. I would have no reason not to tell him about an offer, but I felt like that we were spinning our wheels anyways because he completely rejected any plea offer. He did not want to plea out. He wanted his day in court.

Bishop recounted that Mareno explained that he did not want to take a plea because he thought he had pleaded too quickly on his previous five felony convictions and he wanted to "try this case and try to establish his innocence that he did not commit these burglaries." Regarding pre-trial negotiations, Bishop stated that he was the one who actually negotiated the offer down to twelve years, essentially cutting the previous offer of twenty-five years in half. He stated that

5

when he told Mareno about the twelve-year offer, Mareno rejected it and asked him to ask for ten years.

Bishop testified that he remembered the State informed the trial court of the twelve-year offer during the arraignment and that he subsequently went back into the holding cell to have a brief conversation with Mareno about accepting the offer. Bishop further stated that after conferring with Mareno, the offer "was not accepted" by Mareno, and so the case proceeded to trial. In apparently conflicting testimony, Bishop also stated that the State withdrew the twelve-year offer prior to trial and the making of the record. [1]

Contrary to Bishop's testimony, Mareno testified that Bishop did not advise him of a twelve-year offer and that if he had been informed of such an offer he would have accepted it. Mareno insisted that he first learned of the twelve-year offer during his arraignment when the State put the offer and Mareno's rejection of the offer on the record. Mareno admitted that Bishop previously conveyed plea offers of thirty, twenty-five, seventeen, and fifteen years to him, but nevertheless claimed that he had never been told about a twelve-year offer until the

---

[1] We note that Bishop's testimony at the motion for new trial hearing, as well as the testimony of the other witnesses, is, at best, unclear and at times actually conflicts with the record of the arraignment proceedings. For example, the pre-trial record shows that the twelve-year offer was no longer valid when the State stated it for the record. Therefore, Bishop's memory that Mareno rejected it afterward contradicts the evidence in the record.

6

arraignment, by which point it had expired.[2]  According to Mareno, the State's last offer to him, which he received three weeks before trial, was fifteen years.  He further testified that he had rejected the previous offers in an attempt to get the best offer possible.

Mareno testified that, after the jury found him guilty, he asked Bishop why he did not tell Mareno about the twelve-year offer and Bishop responded, "You wouldn't take the [twelve] years."  Mareno recalled that he was upset and that during his argument with Bishop, the trial court asked, "Could [you all] please keep it down?"  In addition, Mareno testified that sometime before trial, he had asked Bishop to try to get him a ten-year offer.  Bishop, however, left and did not return to discuss the plea bargains with Mareno any further.

The trial court also heard the testimony of Brazoria County Sheriff's Office court guard, Ruben Gamboa.  Gamboa testified that he overheard a conversation between Mareno and Bishop regarding a plea offer of twelve years.  From the conversation, Gamboa believed that Mareno seemed surprised to learn about a twelve-year offer.  Gamboa stated that he heard Mareno tell Bishop that he did not know anything about twelve years and that, when Mareno asked Bishop why he

---

[2]  Although Mareno claimed that he first learned of the twelve-year offer the "morning of sentencing," he made clear that the "first time" he heard of the twelve-year offer was when the prosecutor stated it for the record.  The record is clear that the prosecutor stated the twelve-year offer on the day of arraignment, not sentencing.

7

did not tell him about the twelve-year offer, Bishop responded, "I didn't think you'd take it." Gamboa testified that the conversation occurred after the trial court said there would be no more plea offers or bargains and that it was when Bishop and Mareno were asked to go talk somewhere because "something came up" about the twelve years.[3] However, Gamboa also stated he had "no idea" if Mareno subsequently rejected the offer or if he still pleaded not guilty because Gamboa did not "pay attention" and he really does not "listen to everything that goes on" in the courtroom. He further testified that he did hear Bishop say, "I didn't think you'd take it," but that "anything else . . . is zoned out."

The prosecuting attorney testified that on the morning of arraignment, he remembered conveying a "day of trial offer" to Bishop for twelve years, lower than the previous offers. After he made the twelve-year offer to Bishop, the prosecutor testified that Bishop "retreated into the back of the holding cell where his client was being held." The prosecutor admitted that he did not know what happened during that conversation but that Bishop then came back and asked for ten years, which the prosecutor rejected. The prosecutor then remembered approaching the trial court with Bishop, and Bishop, looking concerned, "said something along the

---

[3]     The pre-trial record does not show that Bishop and Mareno were asked to go have a discussion after "something came up" about the twelve years. Rather, the trial court instructed Bishop to confer with Mareno about the State's motion to consolidate all five charges into one trial. Then, after Mareno pleaded not guilty, the State put the twelve-year offer on the record. At that point, Bishop requested a moment to talk with Mareno; the trial court did not order it.

lines of, 'my knucklehead won't take the offer.'" The prosecutor recalled that after putting the twelve-year offer and rejection on the record at arraignment, the trial court "basically excused" Mareno and Bishop to one of the back rooms because according to his memory, "the [j]udge . . . saw something on the defendant's face or there was some communication that he could see that there was talking going on between trial counsel and Mareno." According to the prosecutor, Mareno then pleaded not guilty and trial commenced.[4]

After the hearing, the trial court signed a written order denying the motions for new trial and arrest of judgment, without making any express findings of fact.

## Discussion

### A.    Standard of Review

We review claims for ineffective assistance of counsel under the two-pronged analysis set forth in *Strickland v. Washington*. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense.

---

[4]    Again, this testimony conflicts with the pretrial record that clearly shows Mareno pleaded not guilty before the State put the twelve-year offer and rejection on the record.

9

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Accordingly, "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

Under the second prong of *Strickland,* "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In making an assessment of effective assistance of counsel, we "must first analyze all allegations of deficient performance, decide whether counsel's conduct was constitutionally deficient, and, if so, then consider whether those specific deficient acts or omissions, in their totality, prejudiced the defense." *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004). Failure to sufficiently prove either prong of *Strickland* defeats a claim for ineffective assistance of counsel. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

When, as here, the ineffective assistance claim is asserted by a defendant in a motion for new trial, and that motion is denied after an evidentiary hearing, we review the denial of the motion under an abuse of discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded in part on other*

10

*grounds by rule*, TEX. R. APP. P. 21.8(b); *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)); *Anderson*, 193 S.W.3d at 39. In addition, we do not substitute our judgment for that of the trial court; rather we decide whether the trial court's decision was arbitrary or unreasonable. *Charles*, 146 S.W.3d at 208 (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). Accordingly, a trial court only abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *Id.*

When the trial court makes no express findings of fact regarding the denial of a motion for new trial, appellate courts should "impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit findings are both reasonable and supported in the record." *Id.* at 213; *Escobar v. State*, 227 S.W.3d 123, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Johnson v. State*, 169 S.W. 3d 223, 239 (Tex. Crim. App. 2005)). Additionally, in our review of a motion for new trial, we "afford almost total deference" to a trial court's determination of facts, especially when those findings turn on an evaluation of the credibility and demeanor of witnesses. *Quinn v. State*,

11

958 S.W.2d 395, 401 (Tex. Crim. App. 1997) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see Charles*, 146 S.W.3d at 208 (stating court of appeals defers to trial court's resolution of historical facts in motion for new trial hearing); *see also Acosta v. State*, 160 S.W.3d 204, 210 (Tex. App.—Fort Worth 2005, no pet.) ("At a hearing on a motion for new trial, the trial judge is the trier of fact and the sole judge of the credibility of the witnesses.").

## B. Applicable Law

It is well-established that a criminal defendant is entitled to effective assistance of counsel during the plea bargaining process. *Pennington v. State*, 768 S.W.2d 740, 740 (Tex. Crim. App. 1988) (citing *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex. Crim. App. 1987)). And the law is well-settled that a failure of defense counsel to inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of professional reasonableness. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000).

## C. Analysis

In his sole issue on appeal, Mareno contends that Bishop rendered ineffective assistance by failing to timely notify him of the twelve-year offer. Mareno's ineffective assistance claim thus depends on the resolution of a factual dispute—whether Bishop timely informed him of the twelve-year offer. *See Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002) (noting that particulars

of when plea offer was conveyed and amount of time it remained available are factual matters to be developed at hearing for motion for new trial). By denying the motions without making any express findings of fact, the trial court implicitly found that Mareno failed to show by a preponderance of the evidence either that trial counsel was ineffective or that he was prejudiced by counsel's representation, or both. *See Johnson*, 169 S.W. 3d at 239.

At the motion for new trial hearing, the trial court was presented with conflicting testimony. Bishop clearly stated that he informed Mareno of the offer, while Mareno equally clearly stated that Bishop had not. At a motion for new trial hearing, the trial court, as the factfinder, has the responsibility to resolve conflicts in testimony. *See Charles*, 146 S.W.3d at 208–10. And we defer to the trial court's resolution. *See id.* at 210; *Acosta*, 160 S.W.3d at 210. The trial court also heard Gamboa's inconclusive testimony that Mareno contends supports his contention that Bishop did not convey the twelve-year offer to Mareno. But Gamboa admitted that he did not pay full attention and his testimony conflicted with the record taken on the day of arraignment. Likewise, the prosecutor's testimony permitted the factfinder to reasonably infer both that Bishop relayed the offer and that he had not. The trial court's denial of the motion for new trial necessarily implies the trial court found that Bishop had relayed the offer. *See Charles*, 146 s.W.3d at 213; *Acosta*, 160 s.W.3d at 210. Because we must give

13

almost total deference to the trial court's determinations of historical fact, this alone is enough to conclude that the trial court did not abuse its discretion in denying the motion for new trial. *See Charles*, 146 S.W.3d at 213 ("[T]he trial judge could have reasonably disbelieved some or all of the affiants' statements, found them inconclusive, contradictory, internally inconsistent, or ambiguous."); *Fimberg v. State*, 922 S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (concluding trial court did not abuse discretion in denying new trial on ineffective assistance grounds when, on one hand, appellant and his son testified plea was involuntary because counsel did not fully inform appellant of consequences of plea and, on other hand, counsel testified he did full inform appellant); *Acosta*, 160 S.W.3d at 210 (finding trial court did not abuse its discretion in denying motion for new trial on ineffective assistance claim because trial court was free to disbelieve appellant's assertions when appellant's testimony was in sharp conflict with trial counsel's testimony).

Mareno contends that this case is similar to *Atkins v. State*, in which the Beaumont Court of Appeals reversed Atkins's conviction under similar facts. 26 S.W.3d 580 (Tex. App.—Beaumont 2000, pet. ref'd). *Atkins*, however, is distinguishable because the record unequivocally supported Atkins's claim that he was unaware of a twelve-year plea offer prior to trial. Atkins immediately interjected when the prosecutor mentioned a twelve-year offer during pre-trial

matters. *Id.* at 581. The record showed that Atkins explicitly told the trial court that he was never offered twelve years and that he wanted to accept it. *Id*. at 582. The trial court questioned Atkins's trial counsel on the record about whether he communicated the offer to Atkins and counsel admitted that he did not tell Atkins that the State had offered twelve years. *Id.* at 583.

Mareno argues that Bishop's request to speak with Mareno immediately after the State's announcement of the offer shows his surprise in learning of the twelve-year offer. But the record is not as clear as Mareno contends. It shows only that Bishop asked to confer with Mareno immediately after the State described the rejection of the twelve-year offer. Unlike the record in *Atkins*, the record here contains no explicit statement by Mareno that he had not heard of the offer, nor does it show the reason Bishop wanted to confer with Mareno. Additionally, in *Atkins*, counsel admitted he had not relayed the twelve-year offer to his client. Here, Bishop testified that he had informed Mareno of the State's offer. Because of these important differences, we conclude *Atkins* is inapplicable. The testimony here was ambiguous and the trial court, as the factfinder, resolved the ambiguity against Mareno. We defer to that resolution unless it is an abuse of discretion, which we conclude it was not.

We overrule Mareno's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).