Affirmed and Opinion filed August 4, 2009








Affirmed and Opinion filed August 4, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00078-CR

____________

 

EX PARTE MATTHEW OSCAR
WOLF, APPELLEE

 



 

On Appeal from the County
Criminal Court at Law No. 8

Harris County, Texas

Trial Court Cause No. 1497049

 



 

O P I N I O N

The State of Texas appeals the trial court=s order granting
habeas-corpus relief in favor of appellee Matthew Oscar Wolf based on the
ineffective assistance of Wolf=s trial counsel.  The State asserts that
Wolf did not show he was confined or restrained pursuant to state action, so as
to invoke the trial court=s habeas-corpus jurisdiction.  The State
also asserts that Wolf=s request for habeas relief is barred
under the doctrine of laches and that the trial court erred in finding
ineffective assistance of counsel.  We affirm the trial court=s order.








                        I.  Factual and Procedural Background

On December 23, 2003, while a junior in college, appellee
Matthew Oscar Wolf was arrested at a Houston department store.  The next day,
Wolf was charged with the theft of two shirts and one pair of pants with a
value of more than $500 and less than $1,000.  Wolf retained attorney Glen
Devlin to represent him.  One week after he was charged, under a plea bargain,
Wolf pleaded Aguilty@, and the trial court signed an order
assessing a fine of $150, deferring adjudication of guilt, and placing Wolf on
community supervision for nine months, as agreed in the plea bargain.  Wolf
successfully completed the community supervision.  On October 15, 2004, the
trial court signed an order for nondisclosure.

After Wolf graduated from college, he obtained employment
as a custody-fund accountant.  Because the order for nondisclosure does not
prevent certain agencies from learning about Wolf=s arrest, this
arrest was uncovered in a search conducted at the request of Wolf=s employer.  The
employer terminated Wolf=s employment based on this arrest. 

Wolf filed an application for writ of habeas corpus in the
trial court asserting, among other things, the following:

!       Wolf seeks habeas relief under the Texas
Constitution and section 11.09 of the Texas Code of Criminal Procedure.

!       Wolf=s plea bargain was the result of Devlin=s ineffective assistance of
counsel.

!       Wolf told Devlin that he was guilty and that
he needed to resolve the case in a manner that would enable him to clear his
record so that he could work in the banking and securities industry after
graduation.  








!       Devlin told Wolf that new legislation would
enable Wolf to have his record sealed if Wolf successfully completed a
deferred-adjudication community supervision.  Devlin did not mention pretrial
diversion or a AClass C special expense,@[1] and Wolf did not know about these
options.  

!       Relying on Devlin=s assurance that Wolf=s record could be sealed if he
successfully completed a deferred-adjudication community supervision, Wolf
agreed to the plea bargain negotiated by Devlin. Wolf successfully completed
the community supervision and obtained an order for nondisclosure.

!       However, despite the order for nondisclosure,
certain agencies still are able to access Wolf=s arrest information.  As a result, Wolf=s first post-graduation employer
learned of Wolf=s arrest and terminated his
employment.  Wolf cannot work in the banking and securities industry because of
the record of his arrest for theft.

!       Wolf would not be suffering this collateral
consequence if Devlin had sought and obtained either pretrial diversion or a
Class C special expense because, in that event, Wolf would have been able to
have the record of his arrest expunged.  

!       Devlin=s failure to seek on Wolf=s behalf either pretrial diversion or Class C
special expense constituted ineffective assistance of counsel that prejudiced
Wolf.

The trial court granted the writ and held a hearing on Wolf=s request for
relief.  At the hearing, Devlin testified as follows:

!       Because Devlin believes that he does not have
a continuing fiduciary duty to Wolf, he destroyed all of the file regarding his
representation of Wolf, except for one written statement by Wolf.  Devlin does
not recall exactly when he destroyed these documents, but it was sometime in
2004 or 2005.

!       Though Devlin is sure he met with Wolf to
discuss Wolf=s case, he does not remember what
was said at that meeting. 

!       Devlin believes that he negotiated the plea
bargain for Wolf on December 31, 2003, the day on which Wolf pleaded Aguilty@.  








!       Devlin did not apply to the district attorney
for pretrial diversion for Wolf because Devlin did not think that Wolf would
get pretrial diversion.  Devlin did not even advise Wolf that he could apply
for pretrial diversion.

!       Devlin is sure that he asked the prosecutor
in this case for a Class C special expense because he does so in every case. 
However, Devlin did not present the prosecutor with any information in support
of such a request.

!       In his practice of law, to the best of his
recollection, Devlin has applied for pretrial diversion for Aless than a dozen@ clients, and it was granted one
time.

Wolf testified at the
hearing as follows:

!       On December 23, 2003, Wolf was arrested for
stealing clothes from a Houston department store.  Wolf was not employed by the
department store in question.

!       After Wolf was charged, he found Devlin by
using the AYellow Pages.@ Wolf and his father met with
Devlin. At the time Wolf was a junior in college, majoring in economics. Wolf
told Devlin that he had committed the theft. 

!       Wolf also told Devlin that Wolf wanted to
have a clear record so that he could be employed in the financial services
industry. Wolf=s father also discussed this issue
with Devlin.

!       Devlin presented Wolf with two options: (1)
plead Aguilty@ and accept deferred adjudication
or (2) plead Anot guilty@ and go to trial. Devlin told Wolf
that, if he successfully completed deferred adjudication, Wolf could later have
his record sealed, which Wolf understood to mean that the record would be
sealed from the public.

!       Devlin did not mention that the governmental
body that would license Wolf in the financial industry could have access to Wolf=s record even after the record was Asealed.@

!       Devlin did not mention pretrial diversion or
Class C special expense.

!       Wolf next saw Devlin in the courtroom on
December 31, 2003.  Wolf accepted the State=s  plea bargain offer.  Wolf would not have accepted this
plea bargain offer if Devlin had told him that Wolf=s record would not be sealed from
the financial industry.

!       Wolf completed his deferred adjudication
probation and obtained an order of nondisclosure, which he believed would keep
the financial industry from learning about his arrest record.








!       Wolf graduated with a degree in economics in
June 2005.  Wolf obtained full-time employment; however, on November 2, 2005,
his employer terminated his employment based on its discovery of his arrest
record following a records search.  Since this termination, Wolf has been
unable to work in the securities industry.  Wolf will not ever be able to work
in that industry as long as his arrest record exists.

!       Wolf has since learned that,
had he received a pretrial diversion or a Class C special expense, his arrest
record could have been expunged.  If Devlin had advised Wolf about a pretrial
diversion and a Class C special expense, Wolf would have asked Devlin to pursue
both of these options and would have provided Devlin with Wolf=s high school and college
transcipts, character letters, or anything else Devlin requested.                

At the hearing, the trial court admitted into evidence the
affidavits of nine criminal defense lawyers who testified to their success at
obtaining either pretrial diversion or Class C special expense for clients such
as (1) two high school students with professional aspirations who, in separate
incidents, stole clothes from department stores and were charged with
misdemeanor theft, (2) a college student with no criminal record charged with
misdemeanor theft for stealing clothes from a department store, (3) a man in
his twenties who had never been in trouble before and who was charged with a
state jail felony for receiving a stolen computer, (4) a nursing student
charged with credit card abuse, (5) a 28-year-old woman, who was bipolar and
easy to manipulate, alleged to have stolen $100 worth of beer from a grocery
store, (6) a young man with mental disabilities who was involved in the
misdemeanor theft of merchandise from a store, (7) a 23-year-old oil and gas
consultant with no criminal record charged with misdemeanor theft, (8) a
stockbroker in his late twenties charged with possession of less than one gram
of cocaine, and (9) a college student with no criminal record, charged with a
state jail felony, who stole more than $1,500 in cash from the clothing store
in which he worked.  








Seven of these criminal defense lawyers testified to their
professional beliefs that a reasonably competent lawyer in Harris County would
try to obtain pretrial diversion or a Class C special expense for a first
offender charged with misdemeanor theft.  One of the lawyers testified that a
reasonably competent lawyer would try to obtain pretrial diversion or a Class C
special expense for a young adult with professional aspirations and that, in
his experience, there is a reasonable probability that such a case would be
resolved in a manner that would enable the client to have his record expunged. 
Another lawyer testified that a reasonably competent lawyer representing Wolf would
have requested pretrial diversion or a Class C special expense and that, based
on his experience, there is a reasonable probability that Wolf=s case would have
been resolved in a manner that would have made Wolf eligible for an expunction
of his criminal record.

The trial court granted relief and issued the following
findings of fact and conclusions of law:

!       Wolf cannot work in the banking and
securities industry because of his arrest for theft.

!       Wolf told Devlin that Wolf needed to resolve
the case in a manner that would enable him to clear his record so that Wolf
could work in the banking and securities industry following graduation.

!       Devlin advised Wolf that recent legislation
would enable Wolf to have his record sealed if he successfully completed a
deferred adjudication probation.  Devlin did not explain that the Securities
and Exchange Commission (ASEC@) and similar agencies still could discover the
arrest.

!       Devlin did not advise Wolf that he could
apply for pretrial diversion or request a Class C special expense, either of
which would have enabled Wolf to have his record expunged if successfully
completed.

!       Wolf accepted the plea bargain in reliance on
Devlin=s advice that his record could be
sealed if he successfully completed a deferred adjudication probation.

!       Wolf would not have accepted the plea bargain
had Devlin advised him that, if he received pretrial diversion or a Class C
special expense, the record of his arrest could be expunged, but if he were
placed on deferred adjudication probation, the SEC and similar agencies could
discover his arrest.  Instead, he would have instructed Devlin to seek a
resolution that would enable him to have the record of his arrest expunged.








!       Devlin did not submit an application to the
district attorney=s office for pretrial diversion,
nor did he request a Class C special expense on Wolf=s behalf.

!       Competent criminal defense lawyers in Harris
County have obtained pretrial diversion or a Class C special expense for high
school, college, and graduate students charged with misdemeanor theft who have
professional aspirations.

!       Devlin=s performance was deficient in failing to apply for
pretrial diversion, request a Class C special expense, or advise Wolf of these
options.

!       Devlin was deficient in failing to advise
Wolf that, if Wolf successfully completed a deferred adjudication probation,
the SEC and similar agencies could discover his arrest for theft even if his
record were sealed.

!       Wolf=s Aguilty@ plea was involuntary as a result
of ineffective assistance of counsel.

                                            II.  Issues Presented

On appeal, the State asserts the following issues:

(1)     The doctrine of laches prevents Wolf from
obtaining relief because his defense attorney destroyed his file and forgot
important details of this case while Wolf delayed filing an application for
writ of habeas corpus.

(2)     Wolf is not confined or restrained pursuant
to state action, and therefore the trial court lacked jurisdiction to issue the
writ.

(3)     Wolf=s trial counsel was not deficient in securing his client a
plea agreement for deferred adjudication.

(4)     Wolf was not directly harmed by any
deficient performance of his trial counsel.

                                         III.  Standard of Review








The applicant for a writ of habeas corpus has the burden of
proving his allegations by a preponderance of the evidence.  Kniatt v. State,
206 S.W.3d 657, 664 (Tex. Crim. App. 2006).  In reviewing the trial
court=s ruling on a
habeas-corpus application, we must review the record evidence in the light most
favorable to the trial court=s ruling, and we must uphold that ruling
absent an abuse of discretion.  Id.  We decide whether a trial court
abused its discretion by determining whether the court acted without reference
to any guiding rules or principles, or in other words, whether the court acted
arbitrarily or unreasonably.  Lyles v. State, 850 S.W.2d 497, 502
(Tex. Crim. App. 1993).  A trial court abuses its discretion when its decision
lies outside of the zone of reasonable disagreement.  Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh=g). 

                                                   IV.  Analysis

A.      Did the trial
court lack jurisdiction because the applicant for habeas relief is not confined
or restrained pursuant to state action?

Addressing the State=s jurisdictional
challenge first, we begin by considering the State=s assertion, in
its second issue, that the trial court lacked jurisdiction because Wolf is not
confined or restrained pursuant to state action.[2] 
To be entitled to habeas relief under article 11.09, an applicant must be Aconfined on a
charge of misdemeanor.@  Tex.
Code Crim. Proc. Ann. art. 11.09 (Vernon 2005).  For a county court at
law to have habeas jurisdiction under the Texas Constitution, an applicant=s liberty must be
restrained.  See Ex parte Schmidt, 109 S.W.3d 480, 483 (Tex. Crim. App.
2003); Ex parte Renier, 734 S.W.2d 349, 353 (Tex. Crim. App. 1987); see
also Tex. Code Crim. Proc. Ann.
art. 11.01 (Vernon 2005).  








In examining whether an applicant for habeas relief
successfully invoked the trial court=s habeas-corpus
jurisdiction, some courts have found a lack of habeas-corpus jurisdiction
because the applicant=s petition did not show that the applicant
was confined or restrained pursuant to any state action.  See Ex Parte
Paprskar, 573 S.W.2d 525, 527 (Tex. Crim. App. 1978), overruled on other
grounds, Weiner v. Dial, 653 S.W.2d 786, 787, n.1 (Tex. Crim. App.
1983);  Dahesh v. State,  51 S.W.3d 300, 303 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Under its second issue, the State
concedes that habeas-corpus jurisdiction may be based on collateral
consequences; however, the State focuses on the state-action requirement and
argues that the collateral consequences in this case result from the action of
private employers, such as Wolf=s first post-graduation employer, who will
not employ individuals with arrests for theft on their record.   Nonetheless,
Wolf=s petition and the
evidence at the hearing both showed that the collateral consequences of which
Wolf complains result from state agencies making available to other government
agencies Wolf=s criminal history record information relating to the
theft offense that gave rise to the deferred adjudication in this case.  See
Act of May 31, 2003, 78th Leg., R.S., ch. 1236, ' 4, 2003 Tex. Gen.
Laws 3499, 3500 (former version of Tex.
Gov. Code Ann. ' 411.081); Act of May 21, 2001, 77th Leg.,
R.S., ch. 474, ' 4, 2001 Tex. Gen. Laws 916, 918 (former
version of Tex. Gov. Code Ann. ' 411.083). 
Therefore, we conclude that Wolf=s inability to
obtain employment in the banking and securities industry constitutes collateral
consequences pursuant to state action.[3] 
Accordingly, we overrule the State=s second issue.

B.      Is habeas-corpus relief barred by laches?








In its first issue, the State asserts that the trial court
erred by not ruling that the requested habeas relief was barred by laches.  As
an initial matter, we note that the State did not raise laches in any written
filing with the trial court, and it did not mention laches at the hearing until
closing argument.  Wolf asserts that, because the State did not plead laches
and because the State did not put Wolf on notice that it was asserting laches
until after the close of evidence at the hearing, the State did not preserve
error.  We presume for the sake of argument that the State may argue on appeal
that, based on the evidence presented, the trial court abused its discretion by
not ruling that the doctrine of laches bars the relief requested by Wolf.  

At the hearing, the State had the burden to (1) make a
particularized showing of prejudice to its ability to respond to the
allegations in Wolf=s application, (2) show that the prejudice
was caused by Wolf having filed a late petition, and (3) show that Wolf has not
acted with reasonable diligence as a matter of law.  See Ex parte Carrio,
992 S.W.2d 486, 488 (Tex. Crim. App. 1999).  Proof of delay alone is not
sufficient.  See id.  In determining whether the requested relief is
barred by laches, the trial court has discretion to assess the equities of the
particular situation.  See id.     

As to diligence, the record reflects that the trial court
signed the challenged order on December 31, 2003, and that Wolf was fired from
his first job after graduation on November 2, 2005.  Wolf filed an application
for habeas-corpus relief on December 13, 2007.  The State did not present
evidence relating to Wolf=s diligence in seeking habeas-corpus
relief.  Wolf stated on direct examination that he was surprised that his
employer had been able to learn about his arrest record.  Wolf further
testified that, some time after October 25, 2005, he discovered that the order
of nondisclosure did not prevent the SEC from learning of his arrest record and
that he learned about the availability of pretrial diversion and Class C
special expense.  Nonetheless, the record is silent as to when after October
25, 2005, Wolf made this discovery.  








On appeal, the State asserts that Wolf did not act with
reasonable diligence as a matter of law because he did not file this
application until more than two years after the termination of his employment
and because the statute of limitations for legal malpractice cases is two
years.  However, the State has cited no case, and we have found none, that
bases the laches determination in a habeas-corpus proceeding on the statute of
limitations for a client=s negligence claim against his attorney. 
Even if this court were to look to this statute of limitations, we note that it
is governed by the Adiscovery rule,@ under which
limitations does not begin to run until the claimant discovers or should have
discovered through the exercise of reasonable care and diligence the facts
establishing the elements of his claim.  See Willis v. Maverick, 760
S.W.2d 642, 645B46
(Tex. 1988).  Therefore, even under the State=s argument, there
would be no proof as a matter of law that Wolf failed to act with reasonable
diligence, if he discovered or reasonably should have discovered Devlin=s ineffective
assistance after December 13, 2005.  However, the evidence does not prove when
Wolf made this discovery, and there is no evidence as to when he should have
discovered this ineffective assistance through the exercise of reasonable care
and diligence.  The State did not prove that Wolf failed to act with reasonable
diligence as a matter of law.








Even if the State had proved a failure by Wolf to act with
reasonable diligence as a matter of law, the State did not make a
particularized showing of prejudice to its ability to respond to the
allegations in Wolf=s application.  See Ex parte Carrio,
992 S.W.2d at 488.  On appeal, the State points out that Devlin destroyed his
entire file regarding his representation of Wolf, except for one document. 
However, Devlin testified that he destroyed these documents sometime in 2004 or
2005, approximately two to three years before Wolf sought relief in this case. 
The State also points to Devlin=s testimony that he does not remember what
Wolf told him or what advice Devlin gave Wolf.  Devlin stated that his
recollection of events would have been better had it been in Acloser proximity@ to his
representation of Wolf in December 2003.  First, reviewing the record evidence
in the light most favorable to the trial court=s ruling, we note
that the trial court was free to conclude that Devlin lacked credibility and to
disbelieve this testimony from Devlin.  See Kniatt, 206 S.W.3d at 664. 
In addition, the record contains no evidence of a causal connection between
Devlin=s alleged memory
failures and Wolf=s alleged failure to act with reasonable
diligence as a matter of law.  The State did not make a particularized showing
of prejudice to its ability to respond to the allegations in Wolf=s application, and
it did not show that the prejudice was caused by Wolf having filed a late
petition.  Under the applicable standard of review, we conclude that the trial
court did not abuse its discretion in declining to rule that Wolf=s requested relief
was barred by the doctrine of laches.  Accordingly, we overrule the State=s first issue.  

C.      Did the
trial court abuse its discretion in finding ineffective assistance of counsel?

The trial court found ineffective assistance of counsel. 
In reviewing claims of ineffective assistance of counsel, we apply a two-prong
test.  See Ex parte Lemke, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000). To
establish ineffective assistance of counsel, Wolf had to prove by a
preponderance of the evidence in the court below that (1) Devlin=s representation
fell below an objective standard of reasonableness; and (2) Devlin=s deficient
performance resulted in prejudice to the defense.  See id.  When
evaluating a claim of ineffective assistance, the appellate court looks to the
totality of the representation and the particular circumstances of each case.  See
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  The reviewing
court indulges a strong presumption that (1) counsel=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy, and (2) that counsel=s conduct fell within the wide range of
reasonable professional assistance.  See id.  To overcome the
presumption of reasonable professional assistance, any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the ineffectiveness.  See id. at 814.

1.       Did the
trial court err by concluding that the securing of a plea bargain for deferred
adjudication constituted ineffective assistance of counsel?








In its third issue, the State asserts that Wolf did not
prove the first prong of the test for ineffective assistance of counsel.  The
State asserts that Devlin=s securing of a plea bargain for deferred
adjudication was not ineffective.  The State=s main argument is
that Devlin had no duty to warn Wolf that banking or securities entities might
have access to his arrest record because attorneys allegedly have no duty to
warn their clients about every possible collateral consequence of a Aguilty@ plea.  However,
the cases cited by the State are not on point because they involve the
sufficiency of the trial court=s admonishment of a defendant when he pleads
Aguilty@ rather than
allegations of ineffective assistance of counsel.  See State v. Jimenez,
987 S.W.2d 886, 888B89 (Tex. Crim. App. 1999); Ex parte
Collazo, 264 S.W.3d at 127B28; Tovar-Torres v. State, 860
S.W.2d 176, 178 (Tex. App.CDallas 1993, no pet.).  This case does not
merely involve a defendant who told his counsel that he was guilty and
indicated that he wanted to negotiate a plea bargain agreement.  An important
circumstance in this case is Wolf=s specific
instruction to Devlin that Wolf needed to resolve the case in a manner that
would enable Wolf to clear his record so he could work in the banking and
securities industry after graduation.  Therefore, a finding that Devlin was
ineffective need not be based on the proposition that every defense attorney
must warn a plea-bargaining client either (1) that the client=s arrest record
will be available to government agencies even after an order for nondisclosure
or (2) that the client has the option to apply for pretrial diversion or a
Class C special expense.  Under the particular circumstances of the case at
hand, the testimony of the nine attorneys supports the trial court=s finding that
Devlin=s representation
of Wolf fell below an objective standard of reasonableness because Devlin
failed to apply for pretrial diversion, request a Class C special expense, or
advise Wolf of these options, even though Wolf told him that Wolf needed to
resolve the case in a way that would enable Wolf to clear his record so that he
could work in the banking and securities industry.  








The State cites testimony from Devlin that he did not apply
on behalf of Wolf for pretrial diversion because Devlin did not think Wolf
would receive pretrial diversion.  The State claims that this is evidence of
Devlin=s trial strategy
and asserts there is no credible evidence to condemn this trial strategy. 
However, the record contains considerable evidence to indict this alleged
strategy.  Wolf testified that he told Devlin that Wolf needed to resolve the
case in a manner that would enable him to clear his record so that he could
pursue a career in the banking and securities industry after graduation.  The
record contains evidence that sometimes after considering a packet in support
of a request for pretrial diversion, the district attorney=s office will deny
the request for pretrial diversion and instead agree to allow a Class C special
expense.  Instead of advising Wolf regarding the two possible means of
achieving Wolf=s stated goals and instead of pursuing these two
means, Devlin advised Wolf to pursue and then pursued a plea bargain that would
not achieve Wolf=s goals.  Devlin=s testimony that
he did not apply for pretrial diversion because Devlin did not think he would
succeed does not conclusively prove that Devlin acted reasonably and pursuant
to a sound strategy.  The above evidence rebutted the strong presumption that
Devlin=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  See Ex parte Lemke, 13 S.W.3d at 795. 

The record contains sufficient evidence to support the
trial court=s finding that Devlin=s legal
representation of Wolf fell below an objective standard of reasonableness. 
Under the applicable standard of review, the trial court did not abuse its
discretion in concluding that Wolf proved the first prong of the test for
ineffective assistance of counsel.  See id.  Accordingly, we overrule
the State=s third issue.

2.       Did the
trial court err by concluding that counsel=s deficient performance
resulted in prejudice?








In its fourth issue, the State asserts that Wolf did not
prove the second prong of the test for ineffective assistance of counsel.  In a
very brief argument under this issue the State first asserts that Wolf failed
to prove that, but for Devlin=s deficient performance, Wolf would not
have pleaded Aguilty@ and instead would have insisted on going
to trial.  The Aprejudice@ prong of the test
for ineffective assistance of counsel sometimes has been stated in this manner
on occasions when counsel=s deficient performance allegedly deprived
the defendant of his right to a trial.  See Johnson v. State, 169 S.W.3d
223, 232 (Tex. Crim. App. 2005); Ex parte Moody, 991 S.W.2d 856, 858
(Tex. Crim. App. 1999).  However, in some instances, the Court of Criminal
Appeals has granted habeas relief based on ineffective assistance of counsel in
a Aguilty@ plea case without
requiring proof that the applicant would have insisted on going to trial.  See
Ex parte Lemke, 13 S.W.3d at 795B98.  When the
applicant alleges prejudice based on the loss of an opportunity to plead Aguilty@ on a different
basis than he did, it makes sense not to require proof that the applicant would
have insisted on going to trial.  See id.  Under the circumstances of
this case, Wolf was not required to prove that he would have insisted on going
to trial.  See id. 

Wolf testified that he told Devlin that Wolf needed to
resolve the case in a manner that would enable him to clear his record so that
Wolf could work in the banking and securities industry after graduation.  Wolf
stated that, if Devlin had advised Wolf about a pretrial diversion and a Class
C special expense, Wolf would have asked Devlin to pursue both of these options
and would have provided Devlin with Wolf=s high school and
college transcipts, character reference letters, and anything else Devlin
requested to pursue those options.  One lawyer testified that a reasonably
competent lawyer would try to obtain pretrial diversion or a Class C special
expense for a young adult with professional aspirations and that, in his
experience, there is a reasonable probability that such a case would be
resolved in a manner that would enable the client to have his record expunged. 
Another lawyer testified that a reasonably competent lawyer representing Wolf
would have requested pretrial diversion or a Class C special expense and that,
based on his experience, there is a reasonable probability that Wolf=s case would have
been resolved in a manner that would have made Wolf eligible for an expunction
of his record.  The evidence supports the finding of a reasonable probability
that, but for Devlin=s deficient performance, the result of the
proceeding would have been different.  See Johnson, 169 S.W.3d at 230;  Ex
parte Lemke, 13 S.W.3d at 796B97.   Under the
applicable standard of review, we conclude the trial court did not abuse its
discretion in determining that Wolf satisfied the second prong of the test for
ineffective assistance of counsel.  See Ex parte Lemke, 13 S.W.3d at
795.  Accordingly, we overrule the State=s fourth issue.

                                                 V. Conclusion








The trial court had jurisdiction over Wolf=s application for
habeas-corpus relief.  The State did not prove that the relief Wolf sought was
barred by the doctrine of laches as a matter of law, and the trial court did
not abuse its discretion  by declining to rule that Wolf=s requested relief
was barred by laches.  Under the applicable standard of review, the trial court
did not abuse its discretion in concluding that Wolf satisfied both prongs of
the test for ineffective assistance of counsel. Accordingly, we affirm the
trial court=s order granting habeas-corpus relief.    

 

 

 

/s/      Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Brown, and Boyce.

Publish C Tex. R. App. P. 47.2(b).









[1]  Under article 45.051 of the Texas Code of Criminal
Procedure, a defendant may plead Aguilty@ or Anolo contendere@ to a Class C misdemeanor and receive
deferred-adjudication probation.  See Tex.
Code Crim. Proc. Ann. art. 45.051 (Vernon Supp. 2009).  If a defendant
successfully completes his probation, and the trial court dismisses the
complaint under this statute, then records relating to this complaint may be
expunged.  See id. art. 45.051(e).  For ease of reference, throughout
this opinion, we refer to deferred-adjudication probation under this statute as
AClass C special expense,@ which the record reflects is a common shorthand reference for this
type of probation.





[2]  Wolf asserts that the State failed to preserve error
as to its second issue; however, because in this issue, the State attacks the
trial court=s jurisdiction as well as this court=s appellate jurisdiction, preservation of error was
not necessary.  See McGowan v. State, 938 S.W.2d 732, 741 (Tex. App.CHouston [14th Dist.] 1996), aff=d, Weightman v. State, 975 S.W.2d 61 (Tex. Crim. App. 1998).  





[3]  The other cases cited by the State do not address
state action and do not indicate that there is no habeas- corpus jurisdiction
on the facts before us.  See Ex parte Collazo, 264 S.W.3d 121, 126B27 (Tex. App.CHouston
[1st Dist.] 2008, pet. ref=d) (concluding
there was habeas- corpus jurisdiction based on applicant=s inability to obtain Texas peace officer license); Ex
Parte Davis, 748 S.W.2d 555, 557B58
(Tex. App.CHouston [1st Dist.] 1988, pet. ref=d) (concluding there was habeas- corpus jurisdiction
based on applicant=s inability to enter military service).